OPINION
{¶ 1} Troy M. Pope, Jr. ("Pope"), administrator of the Estate of Lamar Pope, appeals from a judgment of the Montgomery County Court of Common Pleas, which entered summary judgment on his wrongful death action in favor of the Trotwood-Madison City School District Board of Education ("the school district") and John McKinney.
 {¶ 2} On October 28, 1997, Lamar Pope ("Lamar") was an eighth grade student at Trotwood-Madison Middle School. An "open gym" session was held after school that day during which seventh and eighth graders were allowed to play basketball. The session was supervised by McKinney, the eighth grade basketball coach, and Virgil Carter, a volunteer coach. Lamar was a participant.
 {¶ 3} To facilitate the participation of as many boys as possible, the boys played using half-courts. Using this configuration, the gymnasium's regular basketball court was divided into two short courts, with the baskets positioned along the sides of the regular court. The wall of the gymnasium was about five feet from the end of the half-court, and the wall was covered with a mat. The coaches played on Lamar's team because it did not have five players.
 {¶ 4} While playing a game of five-on-five, Lamar tripped over the feet of another player, stumbled out of bounds, and hit his head on the gymnasium wall. He landed face-down on the floor and was unresponsive. Another player tried to lift Lamar, but the coaches stopped him for fear of aggravating his obvious neck injury. While Carter stayed with Lamar, McKinney called 911 and notified the principal's office of what was happening. By the time the paramedics arrived, Lamar apparently had no pulse and was not breathing. He was never again able to breathe independently. On March 4, 1998, Lamar's family removed life support, and he died.
 {¶ 5} On December 20, 2000, Pope filed a complaint against the school district and McKinney for negligent hiring, negligence in the design and use of the gymnasium, negligent supervision, and other claims. The school district and McKinney filed a motion for summary judgment on the ground that they were statutorily immune from liability pursuant to R.C. Chapter 2744. The trial court granted the motion for summary judgment on August 12, 2003.
 {¶ 6} Pope raises two assignments of error on appeal.
 {¶ 7} "I. The trial court erred in concluding that appellee trotwood-madison was immune from suit in the instant cause pursuant to ohio revised code § 2744.03(A)(5)."
 {¶ 8} Pope claims that summary judgment based on the school district's immunity from liability was inappropriate. He claims that there was a genuine issue of material fact regarding negligence on the part of school employees, which made the school district liable pursuant to R.C. 2744.02(B)(4), and that the immunities afforded by R.C. 2744.03(A)(3) and (5) did not apply.
 {¶ 9} A brief discussion of the statutory framework regarding the liability of political subdivisions will be helpful to our discussion.
 {¶ 10} R.C. 2744.02(A) provides:
 {¶ 11} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 12} At the time of Lamar's injury, R.C. 2744.02(B)(4) provided: "* * * [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." The portion of this statute that sought to limit the liability imposed under R.C. 2744.02(B)(4) to negligence that occurs only in connection with the physical maintenance of governmental property, or because of some "physical defects" in the property, was held to be unconstitutional in State ex rel Ohio Academy of TrialLawyers v. Sheward, 86 Ohio St.3d 451, 1999-Ohio-123,715 N.E.2d 1062, and in Stevens v. Ackman, 91 Ohio St.3d 182,2001-Ohio-249, 743 N.E.2d 901. Thus, at the time of Lamar's injury, R.C. 2744.02(B)(4) imposed liability where an injury resulting from the negligence of an employee of a political subdivision occurred within or on the grounds of buildings that were used in connection with the performance of a governmental function. Hubbard v. Canton City School Bd. of Edn.,97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 18. Schools clearly fall within this category. Id.; R.C. 2844.01(C)(2)(c).
 {¶ 13} When liability is established pursuant to R.C.2744.02(B), a political subdivision may nonetheless avoid liability if it can establish one of the defenses or immunities set forth in R.C. 2744.03. R.C. 2744.03 contains two provisions that are relevant to this appeal. R.C. 2744.03(A)(3) provides immunity to a political subdivision if the employee's action or failure to act that gave rise to the claim of liability "was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(5) provides that a "political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." Additionally, R.C. 2744.03(A)(6) provides immunity for an employee in his personal capacity except in certain narrow circumstances.
 {¶ 14} Pope claims that the school district was liable pursuant to R.C. 2744.02(B)(4) because its employee, McKinney, was negligent in the manner in which he conducted the "open gym" session during which Lamar was injured. Specifically, Pope claims that the use of half courts in a competitive setting was inherently dangerous, that McKinney's participation in the basketball games impaired his ability to supervise the students, that McKinney should have prevented other students from moving Lamar, and that McKinney should have administered cardiopulmonary resuscitation ("CPR") despite Lamar's neck injury. Pope also claims that school district employees were negligent in using a mat on the gym wall "that was too thin to afford any protection," in employing a coach, McKinney, who was not certified in CPR, and in having only five feet between the end line of the side courts and the wall. The school district asserts that R.C. 2744.03(A)(3) and (5) shield it from liability even if its employees did act negligently.
 {¶ 15} In our view, R.C. 2744.03(A)(5) governs the use of half-courts in the gymnasium and the adequacy of the mats on the walls because these decisions related to the use of school facilities. It is undisputed that the gymnasium was configured in such a way as to accommodate both full court and half-court play. There were markings on the floor and fixed backboards to allow half-court play. Therefore, McKinney did not simply decide, on his own initiative, to conduct the open gym using half-courts on October 28, 1997. Those who designed the gym had intended for it to be used in this manner. This decision fell squarely within the immunity provided by R.C. 2744.03(A)(5) unless the school district acted with malicious purpose, in bad faith, or in a wanton or reckless manner, because it involved the exercise of judgment or discretion in determining how to use the facilities.
 {¶ 16} Pope does not allege that the school district acted with malicious purpose or in bad faith, but he does contend that it acted recklessly or wantonly in erecting a wall five feet from the edge of the half-courts. In the context of R.C. Chapter 2744, courts have defined "recklessness" as "a perverse disregard for a known risk." Lipscomb v. Lewis (1993), 85 Ohio App.3d 97, 102,619 N.E.2d 102. Wantonness "implies the failure to exercise any care for the safety of those to whom a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such persons which the exercise of care might avert, and exhibits a reckless disregard of consequences; it does not embrace intent to injury." Addis v. Howell (2000),137 Ohio App.3d 54, 59,738 N.E.2d 37, citing 58 Ohio Jurisprudence 3d, Insurance, Section 868.
 {¶ 17} Pope has not submitted sufficient evidence of the type required by Civ.R. 56(C) to create a genuine issue of material fact on this issue. Pope's evidence came from the affidavit of his expert, Herb Appenzeller. Appenzeller stated, in a conclusory fashion, that McKinney and the school district had acted recklessly in using the half-courts without adequate distance from the end lines of the courts to the walls and that there was a foreseeable risk of injury with a wall five feet from the end line. No proper evidence was offered about what the distance should have been or what the distance was from the edge of the full court to the wall.[1]
 {¶ 18} Even assuming that an injury was foreseeable, as Appenzeller asserts, he did not allege any facts that created a genuine issue as to whether the school district had acted with a perverse disregard for the risk of injury or had failed to exercise any care for the students when a great probability of harm was apparent. The fact that a mat had been attached to the wall demonstrated that the school had not disregarded the risk and had exercised some care for the students' safety. The steps taken by the school may have been insufficient to prevent all injuries to the students, including Lamar's injury, but such a shortcoming amounts to negligence, not recklessness or wantonness.
 {¶ 19} R.C. 2744.03(A)(5) also relates to the adequacy of the mats on the walls. The employees of the school district exercised discretion in determining whether to acquire mats for the gym walls and what type of mats to acquire. Thus, the school district is immune from liability pursuant to R.C. 2744.03(A)(5) unless it acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Again, neither malicious purpose nor bad faith was alleged. We must determine whether Pope created a genuine issue of material fact as to whether the school district had acted in a wanton or reckless manner in installing the mats that it did.
 {¶ 20} It was undisputed that there had been a mat on the wall with which Lamar collided. In opposition to the school district's motion for summary judgment, Pope repeatedly asserted that the mat had been "old" and "thin." This evidence came from the depositions of student athletes who were present the day of Lamar's injury. Pope also offered evidence that the mats had been replaced within a few months after Lamar's injury. Appenzeller stated in his affidavit that the school district had acted with "conscious disregard for the safety of Lamar Pope" and that the open gym had created "a foreseeable risk of injury because the mere five feet between the end line and the thinly padded gymnasium wall was not adequate to prevent injuries." It does not appear from the affidavit that Appenzeller had any first hand knowledge of the condition of the mat.
 {¶ 21} Pope offered no specific evidence about the type of mats on the gym walls, their thickness, or their firmness at the time of Lamar's injury. He also did not provide any evidence about the quality of mat that is recommended for school gymnasiums, if any, or commonly used in other schools. While the evidence presented regarding the quality of the mats might have created a genuine issue of material fact as to negligence, it did not create a genuine issue of material fact as to recklessness or wantonness on the part of school officials in installing this type of mat. As discussed supra, a showing of recklessness or wantonness requires a perverse disregard for a known risk or a failure to exercise any care for the safety of those to whom a duty of care is owing when there is a great probability of harm which the exercise of care might avert. Although the mat clearly did not prevent Lamar's injuries in this case, Pope did not create a genuine issue of material fact that a different mat would have done so or that school officials acted recklessly or wantonly in installing the mats that they did.
 {¶ 22} Pope also contends that there was a genuine issue of material fact as to whether R.C. 2744.03(A)(3) applied to provide immunity to the school district for McKinney's alleged negligence. Pope asserts that McKinney acted negligently in participating in the basketball games, in allowing another student to move Lamar after he had been injured, and in failing to administer CPR. Pope further contends that McKinney's actions were not within the discretion afforded to a person in his position with respect to policy-making and planning, as required for immunity pursuant to R.C. 2744.03(A)(3). The school district contends that McKinney's actions were within his discretion. We note that, unlike R.C. 2744.03(A)(5), R.C. 2744.03(A)(3) does not make an exception for wanton or reckless conduct.
 {¶ 23} As discussed supra, R.C. 2744.03(A)(3) provides that a political subdivision is immune from liability if the employee's act that gave rise to the claim of liability "was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." We have held that "[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion." Addis v. Howell (2000),137 Ohio App.3d 54, 60, 738 N.E.2d 37. In Addis, we adopted this view with respect to the discretion exercised under R.C.2744.03(A)(5), but we believe that our analysis also applies to the discretionary decisions discussed under R.C. 2744.03(A)(3). Routine decisions requiring little judgment or discretion are not subject to immunity pursuant to R.C. 2744.03(A)(3). Perkins v.Norwood City Schools (1999), 85 Ohio St.3d 191, 193,707 N.E.2d 868. If an act of discretion is merely a choice between alternate courses of conduct, then almost every volitional act would involve an exercise of discretion, and such a definition would encompass virtually everything that a political subdivision might do. Addis, 137 Ohio App.3d at 60. Thus, viewed in the context of the duties and responsibilities of the employee's position, decisions involving the exercise of judgment are discretionary, and therefore do not create liability, whereas routine, ministerial decisions may be a basis for liability. R.C.2744.03(A)(3).
 {¶ 24} Pope's ability to recover for the alleged negligence of McKinney turns on whether McKinney's decisions were discretionary or ministerial. Some of our prior decisions provide guidance in assessing the nature of McKinney's decisions, and we will discuss these decisions briefly.
 {¶ 25} In Addis v. Howell, 137 Ohio App.3d 54, the school had a system in place whereby teachers supervised the students who were departing on school buses until they were actually on the buses, but children who were riding home with an adult were simply released into the school parking lot. Eight-year-old Addis had been unsupervised in the parking lot because he had believed that his mother would pick him up. As such, school personnel were unaware that Addis's mother did not arrive as expected. Addis decided to walk home and was hit by a car along a busy road. We held that the failure of school employees to supervise Addis had not been a discretionary decision and that the school district, therefore, was not immune from liability. We found that, like routine decisions requiring little judgment or discretion, decisions that involve inadvertence, inattention, or unobservance likewise do not involve discretion and are not covered by the immunity afforded in R.C. 2744.03(A).
 {¶ 26} In Moore v. Southeastern Local School Dist. (March 29, 1996), Clark App. No. 95-CA-23, a student filed suit against her physical education teacher for injuries she sustained when she was hit in the head with a shot put thrown by another student during class. Our opinion does not detail the manner in which the class was being conducted at the time of the student's injury. However, based on the affidavits of the teacher and the school superintendent that the teacher had "planned, implemented, organized, instructed, and supervised his physical education class" and thus had exercised discretion in making the decisions that were the subject of the lawsuit, we held that the school district was immune pursuant to R.C. 2744.03(A)(3).
 {¶ 27} Similarly, in Mosely v. Dayton City School Dist.
(July 6, 1989), Montgomery App. No. 11336, a student challenged the teacher's method of conducting a physical education class wherein she fractured both of her arms. We affirmed the finding of the trial court that "the manner of conducting the physical education class necessarily involved the exercise of discretionary judgment" by the teacher and held that the school was therefore immune from liability in the absence of a showing of reckless or wanton behavior. Although Mosely applied R.C.2744.03(A)(5), its rationale also applies to the immunity afforded under R.C. 2744.03(A)(3).
 {¶ 28} Although not involving a school setting, we think that our decision in Englehardt v. Beavercreek (Aug. 13, 1992), Greene App. No. 91-CA-71, is also analogous. In Englehardt, we held that a police officer had exercised discretion with respect to the responsibilities of his position when he decided to preserve an accident scene on a slippery road rather than to clear the heavily traveled roadway. While the accident scene was being preserved, one of the cars involved in the initial accident was hit by another car. R.C. 2744.03(A)(3) barred the city's alleged liability because the police officer had exercised his discretion.
 {¶ 29} Pope contends that McKinney's decision to participate in the basketball game was not discretionary. Pope essentially argues that McKinney's decision to participate could not have been discretionary because it was irresponsible. The wisdom of a decision, however, does not determine its nature. Even if we assume, for the sake of argument, that McKinney acted negligently when he participated in the basketball game, his negligence would not necessarily entitle Pope to take his case to a jury. The point of R.C. Chapter 2744 is to immunize political subdivisions under certain circumstances from liability rooted in negligent behavior. Pope's argument that "a reasonable jury construing all evidence in a light most favorable to [him] could conclude that McKinney was negligent in his supervision of the boys" ignores the fact that some negligent acts are subject to immunity under the statutes. Under R.C. 2744.03(A)(3), the question turns on whether McKinney's acts were discretionary.
 {¶ 30} In our view, McKinney's decision to participate in the basketball games while also supervising those games was within his discretion. In his affidavit, McKinney stated that he had participated in the game in order to facilitate Lamar's participation. The number of participants apparently had not divided equally into five-member teams, so McKinney and the volunteer coach, Carter, joined Lamar's team. McKinney further stated that, although he was participating in the basketball games, he "was at all times supervising the activities of the `open gym' attendees." The supervision of the basketball games in this manner evinces a "positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved," i.e., the participation of all of the students. Addis, 137 Ohio App.3d at 60. Moreover, the exercise of this type of judgment is analogous to that inMosely and Englehardt. Therefore, the school district was immune from liability pursuant to R.C. 2744.03(A)(3).
 {¶ 31} We are also of the view that McKinney's decision not to administer CPR to Lamar after his injury was a discretionary one. It certainly was not routine, requiring little judgment or discretion. See Addis, 137 Ohio App.3d at 60. McKinney stated in his affidavit that he had been trained in CPR and that, as part of his training, he had been taught not to move a victim who was lying face down and who may have suffered a serious neck injury. He also indicated that, pursuant to his training, the fact that Lamar had been bleeding from his mouth was a contraindication for turning him onto his back. McKinney obviously exercised judgment in deciding not to attempt CPR. Thus, pursuant to R.C. 2744.03(A)(3), the school district could not be held liable for McKinney's decision even if it was negligent or reckless.
 {¶ 32} Finally, Pope argues that the school district was liable because it employed a coach who was not certified in CPR. He bases this argument on Ohio Admin. Code 3301-27-01, which requires all coaches to have CPR certification. Pope argues that the regulation proves that the injury was foreseeable and that the school district had no right to exercise discretion in this regard. We addressed a similar argument in Glover v. DaytonPublic Schools (Aug. 13, 1999), Montgomery App. No. 17601. InGlover, we rejected a plaintiff's argument that R.C.4511.76(C), which prohibits the operation of school buses in violation of department of education rules, imposes liability for purposes of the immunity exception in R.C. 2744.02(B)(5). We held that civil liability must be expressly imposed. Moreover, we noted that even statutes that impose criminal liability on school boards have been held not to impose civil liability. Id., citingTurner v. Central Local School Dist. (Sept. 5, 1997), Wyandott App. No. 4-97-13. Because Ohio Admin. Code 3301-27-01 does not expressly impose liability of any kind, we cannot conclude that this regulation created a genuine issue of material fact as to the school district's liability for employing a coach without a current CPR certification.
 {¶ 33} Pope failed to create a genuine issue of material fact that any of the school district's actions fell outside the scope of the immunity afforded by R.C. 2744.03(A)(3) and (5).
 {¶ 34} The first assignment of error is overruled.
 {¶ 35} "II. The trial court erred in concluding that appellee mckinney was immune from suit in the instant cause pursuant to ohio revised code [§ 2744.03(A)(6)]."
 {¶ 36} R.C. 2744.03(A)(6) states, in pertinent part:
 {¶ 37} "[T]he employee is immune from liability unless one of the following applies:
 {¶ 38} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 {¶ 39} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 40} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. * * *"
 {¶ 41} Pope contends that McKinney was not entitled to immunity under R.C. 2744.03(A)(6) because he acted recklessly. He also contends that McKinney waived his right to assert immunity when he participated in the basketball game because he assumed the role of a participant rather than a supervisor.
 {¶ 42} Pope's argument that McKinney waived his right to assert immunity when he participated in the basketball game finds no support in Ohio law, and we are unpersuaded by it. Pope cites an Illinois case, whose holding is based on an Illinois immunity statute, and that case involved one-on-one competition between a student and a "recreational leader" who was a school employee. See Longfellow v. Corey (4th Dist. Ill.),286 Ill. App.3d 366. Because the laws and the facts are distinguishable, we decline Pope's invitation to apply Longfellow v. Corey here.
 {¶ 43} Pope asserts that McKinney was not entitled to immunity because he acted recklessly in participating in the basketball games, which prevented him from properly supervising the students' activities. Pope also claims that McKinney was reckless in allowing other students to move Lamar after he was injured. Finally, Pope claims that McKinney was reckless in failing to administer CPR.
 {¶ 44} As discussed supra, recklessness is defined as a "perverse disregard for a known risk." Lipscomb,85 Ohio App.3d at 102. We cannot say that there was a genuine issue of material fact as to whether McKinney had shown a perverse disregard for a known risk by playing basketball with his students. Pope makes much of the fact that no one was calling fouls during the basketball games, but there is no evidence that any injuries, including Lamar's, resulted from the failure to call fouls. Nor is there any evidence that McKinney would have been able to call fouls on multiple games even if he had not been playing. There is simply no evidence that McKinney showed a perverse disregard for the fact that students might be injured. This is especially true with respect to Lamar, who was one of McKinney's teammates. While McKinney's supervision of students involved in other games on other courts may have suffered as a result of his participation, his participation as Lamar's teammate would have allowed him to be more attentive to Lamar.
 {¶ 45} Second, Pope presented evidence that McKinney had failed to prevent another student from moving Lamar after he had been injured. The students' accounts of a friend's attempt to lift Lamar after he had been injured evince a rapid series of events in which a teammate tried to help Lamar up, apparently assuming that he would be trying to get up of his own accord. It was at this point that the other students realized that Lamar was not getting up and that he was very seriously injured. In keeping with his first aid training, McKinney came to Lamar's aid and told the student to put Lamar down. It is not clear from any of the evidence presented that McKinney had an opportunity to prevent the other student from trying to lift Lamar. Further, there is no genuine issue of material fact that McKinney acted quickly and reasonably under the circumstances. There is certainly no evidence of a perverse disregard for the manner in which Lamar was treated after he had been injured.
 {¶ 46} Third, Pope claims that McKinney acted recklessly in failing to administer CPR to Lamar. McKinney stated that he had been trained not to move someone who was lying face-down with a neck injury and who had blood coming out of his mouth. The emergency medical technicians ("EMTs") confirmed in their depositions that these maxims are taught in CPR and first aid classes. The EMTs also presented evidence that, even with their advanced training, it would take two people to safety turn a prone person with a serious neck injury. There was no genuine issue of material fact that McKinney acted recklessly in choosing not to perform CPR in the tragic circumstances with which he was presented.
 {¶ 47} The second assignment of error is overruled.
 {¶ 48} The judgment of the trial court will be affirmed.
Brogan, J. and Grady, J., concur.
[1] Appenzeller's contention that "architectural standards call for ten (10) feet of space between the end lines and the wall" was stricken by the trial court when Appenzeller failed to produce adequate information about who had promulgated these standards and when or whether they applied under the facts of this case. Pope has not challenged this decision on appeal.