OPINION
{¶ 1} Appellants, Brittany Mason, a minor, by and through her mother, Diann Mason, and Diann Mason, appeal a May 6, 2005 decision emanating from Trumbull County Court of Common Pleas, which granted the motion for summary judgment of appellees, Bristol Local School District Board of Education ("Bristol") and Maplewood Local School District Board of Education ("Maplewood").
 {¶ 2} On April 15, 2004, appellants filed a complaint for personal injuries against appellees and John Does number one through three, alleging, inter alia, that Bristol was negligent in its failure to construct, maintain and design a safe discus pit, and in its failure to warn persons regarding the discus pit. Further, appellants allege that both Bristol and Maplewood were negligent in their failure to properly supervise the students, and in their decision to continue the track meet in the bad weather. As a result, appellant Brittany Mason ("Brittany") was seriously injured. Appellant Diann Mason, appellant Brittany's mother, also filed a complaint for loss of consortium. Appellees filed their answer on June 4, 2004.
 {¶ 3} The following facts gave rise to this appeal. According to appellant Brittany's deposition, the incident occurred on April 15, 2002. Appellant Brittany was thirteen years old at the time and was in seventh grade at Maplewood. The incident occurred as part of the first track and field event of the season, which took place at Bristol. Appellant Brittany competed in the shot put and discus events. Prior to the first meet, she said they practiced about five or six times, and were taught how to throw by upper class students. She also stated that when they were practicing at Maplewood, her coaches instructed them to stand back at the fence and to watch what they were doing.
 {¶ 4} On the day in question, appellant Brittany indicated that an official named Ken was present, as well as a student to assist him with retrieving the discus. The area where the discus players threw was surrounded by a cage. Ken instructed the students to stay behind the orange fence, which ran along side the caged area. She stated that after some students went in front of the fence, that Ken again warned, "`make sure you guys stay behind the fence.'"
 {¶ 5} At some point, appellant Brittany recalled that there was a rain delay. After they were instructed that the meet would continue, appellant Brittany stated that the square where the discus players threw had a puddle of water on it. She threw the discus one time after the meet resumed. She did not slip when she threw it. When appellant Brittany finished her turn, she exited the cage. Danielle Thompson ("Danielle") threw the discus after her. Appellant Brittany said that she then turned away from the discus throwers to watch a sprinter, and when she turned back around, she was hit by a discus thrown by Danielle. She testified that she was not standing inside the fence when she was hit, that she was where she was supposed to be. Danielle told her after the accident that she had over spun and fell, and that the discus had ricocheted off a pole inside the throwing cage. Appellant Brittany's nose was crushed and she had to have reconstructive surgery.
 {¶ 6} According to the deposition of Mary Beth Hanuschak ("Hanuschak"), she had been a teacher for thirty years at Maplewood and the coach of the middle school track team for over twenty-two years. She indicated that the track season began during the first week of March in 2002. She has one assistant coach, and a varsity coach helps teach the events of shot and discus. She stated that prior to April 15, 2002, they probably only had one or two meets, but that they practiced every day from the beginning of March.
 {¶ 7} Hanuschak testified that she and her assistant coach were the only employees of Maplewood who were present at the track meet on April 15, 2002. She indicated that the athletic director of Bristol and the Bristol coaches were also present. She stated that she remembered that there was a rain delay on that day, but that there was no thunder or lightening. If there is just rain, they will not cancel the event, but they may delay it. Usually, it is a mutual decision between the starter and the coaches.
 {¶ 8} When asked what criteria is involved in deciding whether to resume the meet, she stated that as long as there is not thunder or lightening, that they will run. On the day in question, she could not remember if someone looked at the track or the discus pit prior to resuming play. When they resumed the meet that day, there were puddles on the track, but she indicated that "that's not a big thing for us."
 {¶ 9} According to the deposition of Ken Armour ("Armour"), he had been volunteering with Bristol's track team, running the shot and discus events, for about ten years. He did not have any prior training in track and field, nor was he certified in any way. He supervised the discus event on the day in question. He stated that he had a recorder helping him that day, as well as a spotter visually marking the discus where it first lands, and assisting him with the tape measurement.
 {¶ 10} He then explained the usual procedure which he follows at the meets. He indicated that he usually begins by having everyone sign her name. He has them warm up by throwing the discus one at a time. After they warm up, he explains the rules to them, where the boundaries are, and where they are supposed to exit and enter.
 {¶ 11} Prior to the rain delay, he recalled that some of the girls had completed all four throws, but that seven or eight had one more throw to make. Before the rain delay, he said that he had problems with the girls staying behind the fence that day and that he had to remind them of the rules many times. He noted that it had been lightening, and that is why they delayed the meet. They resumed it after lightening had not been seen for a half hour. He indicated that no one inspected the discus area prior to resuming the event, because it was a cement pad. It did not have standing water on it when they began throwing after the rain.
 {¶ 12} When Danielle threw her discus, he said that he was still sixty or seventy feet out in the field, after he had marked appellant Brittany's throw. He saw appellant Brittany standing in front of the fence where she was not supposed to be standing.[1] He did not yell at that point for her to move because he did not realize that Danielle was going to throw so quickly. He stated that he witnessed Danielle over spin her throw, but that she did not slip on water. He saw the discus hit appellant Brittany in the face. At that point, he ran in and instructed the students to get the Maplewood coach, the Bristol coach, and call 9-1-1.
 {¶ 13} On March 14, 2005, appellees filed their joint motion for summary judgment pursuant to Civ.R. 56(B). Appellants filed their memorandum in opposition to appellees' motion for summary judgment on April 22, 2005. Appellees filed their reply to appellant's opposition on April 29, 2005.
 {¶ 14} On May 6, 2005, the trial court granted appellees' motion for summary judgment. It is from this judgment that appellants appeal, raising the following sole assignment of error:
 {¶ 15} "[1.] The [t]rial [c]ourt erred to the prejudice of [appellants] by granting summary judgment to [appellees]."
 {¶ 16} The trial court did not specify its reasons for granting summary judgment. Thus, appellants' three issues posited for review are based upon the arguments set forth by appellees in the summary judgment proceedings below. Appellants argue that the trial court erred by granting summary judgment to appellees based upon R.C. 2744.01, the sovereign immunity statute; R.C. 1533.181, the recreational user's statute; and also on the doctrine of primary assumption of the risk.
 {¶ 17} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 18} The Ohio Supreme Court stated in Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the recordwhich demonstrate the absence of a genuine issue of fact on amaterial element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 19} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated, "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 20} Appellants' first issue presented is whether the trial court erred to the prejudice of appellants by granting summary judgment based upon R.C. Chapter 2744, the sovereign immunity statute.
 {¶ 21} The common-law concept of sovereign immunity has been codified in R.C. Chapter 2744. See Wilson v. Stark Cty. Dept. ofHuman Servs. (1994), 70 Ohio St.3d 450, 453.
 {¶ 22} R.C. 2744.02(A)(1) provides a general grant of immunity as follows:
 {¶ 23} "[f]or the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is notliable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added.)
 {¶ 24} In the majority of cases, the broad immunity of R.C. Chapter 2744 provides a complete defense to a negligence cause of action. Turner v. Central Local School Dist. (1999),85 Ohio St.3d 95, 98; Sabulsky v. Trumbull Cty., 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, at ¶ 11 ("R.C. Chapter 2744 provides nearly absolute immunity to political subdivisions in order to limit their exposure to money damages."). However, "[t]he immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute[.]" Cater v. Cleveland (1998),83 Ohio St.3d 24, 28, citing Hill v. Urbana (1997), 79 Ohio St.3d 130.
 {¶ 25} The Supreme Court set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: the first tier is to establish immunity under R.C.2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies. If one does, then immunity is reinstated. Cater, supra, at 28;Hubbard v. Canton City School Bd. of Edn., 97 Ohio St.3d 451,2002-Ohio-6718, at ¶ 10-12.
 {¶ 26} For the purposes of the immunity statute, appellees qualify for general immunity since public school districts are "political subdivisions" pursuant to R.C. 2744.01(F), and R.C.2744.01(C)(2)(c) states that the provision of a system of public education is a governmental function. Hubbard at ¶ 11. Further, R.C. 2744.01(C)(2)(u)(i) defines governmental function to include "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility, school auditorium, or gymnasium or any recreational area or facility, including * * * [a] park, playground, or playfield[.]" The discus event occurred on a track field, owned and operated by appellee Bristol. Moreover, appellee Maplewood participated with appellee Bristol on the day of the track meet by agreeing to go forward with the track meet after the rain delay. Accordingly, appellees have satisfied the first prong of the Cater test.
 {¶ 27} We next turn to the issue of whether any of the exceptions under R.C. 2744.02(B) apply.
 {¶ 28} R.C. 2744.02(B) removes the general statutory presumption of immunity for political subdivisions only under the following express conditions: (1) the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1); (2) the negligent performance of proprietary functions, R.C.2744.02(B)(2); (3) the negligent failure to keep public roads open and in repair, R.C. 2744.02(B)(3); (4) the negligence of employees occurring within or on the grounds of buildings used in connection with the performance of governmental functions, R.C.2744.02(B)(4); or (5) express imposition of liability by statute, R.C. 2744.02(B)(5).[2] Sabulsky, supra, at ¶ 13, citingEngleman v. Cincinnati Bd. of Edn. (June 22, 2001), 1st Dist. No. C-000597, 2001 Ohio App. LEXIS 2728, at 8.
 {¶ 29} Appellees contend, and we agree, that the only possible exception to their immunity lies in R.C. 2744.02(B)(4): the negligence of employees occurring within or on the grounds of buildings used in connection with the performance of governmental functions. The alleged negligence of appellees' employees occurred on the grounds of buildings indisputably owned by appellee Bristol. Thus, we conclude that this exception applies and appellees could be liable.
 {¶ 30} Appellees argue, however, that even if we were to assume that their employees were negligent, they would still not be liable under the third tier of the analysis because they have a defense under the R.C. 2744.03. There are two possible defenses that may apply to shield appellees from liability. R.C. 2744.03
provides in part that:
 {¶ 31} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 32} "* * *
 {¶ 33} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 {¶ 34} "* * *
 {¶ 35} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 36} Appellants argue that R.C. 2744.03(A)(5) does not apply since the legislature only intended the immunity of that section to extend to the acts of the political subdivision and not the acts of employees of the political subdivision. Appellants rely on Kiep v. Hamilton (May 19, 1997), 12th Dist. No. CA96-08-158, 1997 Ohio App. LEXIS 2121, for this proposition.
 {¶ 37} On September 9, 2005, this court released Elston v.Howland Local Schools, 11th Dist. No. 2004-T-0092,2005-Ohio-4765, where a majority of the panel held that, "[a] plain reading of R.C. 2744.03(A)(5) establishes that immunity is extended only to the acts of a political subdivision, not to the acts of its employees." Id. at ¶ 32. (Emphasis added.)
 {¶ 38} However, this writer dissented, since "Ohio case law has consistently applied immunity under R.C. 2744.03(A)(3) and (5) to school athletic situations where the discretion of a school or a school employee was not exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." Id. at ¶ 39 (Ford, P.J., dissenting) citing Pope v. Trotwood-MadisonCity School Dist. Bd. of Edn., 2d Dist. No. 20072,2004-Ohio-1314; Hughes v. Wadsworth City School Dist. (Mar. 29, 2000), 9th Dist. No. 2961-M, 2000 Ohio App. LEXIS 1271; Thompsonv. New Miami Local School Dist. (Sept. 8, 1998), 12th Dist. No. CA98-03-051, 1998 Ohio App. LEXIS 4172; Moore v. SoutheasternLocal School Dist. (Mar. 29, 1996), 2d Dist. No. 95-CA-23, 1996 Ohio App. LEXIS 1188; Harland v. W. Clermont Local School Dist.
(Aug. 1, 1994), 12th Dist. No. CA94-01-006, 1994 Ohio App. LEXIS 3367; Alessi v. Buckeye Local Schools Bd. of Edn. (June 29, 1990), 11th Dist. No. 89-A-1430, 1990 Ohio App. LEXIS 2726.
 {¶ 39} On December 28, 2005, on review of an order from this court certifying a conflict, the Supreme Court agreed that a conflict existed as to "`[w]hether a political subdivision's immunity from liability under R.C. 2744.03(A)(5) applies only to the acts of the political subdivision and not to the acts of the employees of the political subdivision.'" Elston v. HowlandLocal Schools, 107 Ohio St.3d 1694, 2005-Ohio-6763.
 {¶ 40} Regardless of whether R.C. 2744.03(A)(5) would reinstate immunity to appellees, we conclude that R.C.2744.03(A)(3) shields appellees from liability. R.C.2744.03(A)(3) provides: "[t]he political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."[3] This provision does not apply to routine, ministerial decisions; however, it does apply to decisions that are discretionary, involving an exercise of judgment pursuant to the duties and responsibilities of the position. Pope, supra, at ¶ 23. The manner of conducting a track meet necessarily involves an exercise of discretionary judgment and, therefore, provides appellees with immunity. See, e.g., Id. at ¶ 30;Moore, supra; Mosely v. Dayton City School Dist. (July 6, 1989), 2d Dist. No. 11336, 1989 Ohio App. LEXIS 2695; Banchichv. Port Clinton Pub. School Dist. (1989), 64 Ohio App.3d 376;Vick v. Norwalk City School Bd. (Sept. 16, 1994), 6th Dist. No. H-93-62, 1994 Ohio App. LEXIS 4043; Koch v. Avon Bd. of Edn.
(1989), 64 Ohio App.3d 78; Neal v. Southwestern City SchoolDist. Bd. of Edn. (Dec. 8, 1994), 10th Dist. No. 94APE067-96, 1994 Ohio App. LEXIS 5512. But, see, Spaid v. Bucyrus CitySchools (2001), 144 Ohio App.3d 360 and Henney v. Shelby CitySchool Dist., 5th Dist. No. 2005 CA 0064, 2006-Ohio-1382. Thus, we conclude that appellees are afforded immunity pursuant to R.C.2744.03(A)(3). Appellants' first issue is without merit.
 {¶ 41} Having determined that appellants' first issue lacks merit, we conclude that the trial court did not err when it granted summary judgment to appellees. However, for the sake of affording appellants a complete analysis, we will address their remaining two issues.
 {¶ 42} In their second issue, appellants contend that the doctrine of primary assumption of the risk does not bar their claim. We agree.
 {¶ 43} "Primary assumption of the risk is generally applied in cases where there is a lack of duty owed by the defendant to the plaintiff as a matter of law." Brewster v. Fowler (Oct. 13, 2000), 11th Dist. No. 99-T-0091, 2000 Ohio App. LEXIS 4792, at 8, citing Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 128
(Lundberg Stratton, J., concurring in part and dissenting in part). See, generally, Gallagher v. Cleveland Browns FootballCo. (1996), 74 Ohio St.3d 427. "It acts as an absolute bar to a claim of negligence by assuming that some known risks are so inherent in certain activities or situations that they cannot be eliminated." Brewster, supra, at 8-9, citing Ferguson v.Cincinnati Gas Electric Co. (1990), 69 Ohio App.3d 460, 462;Collier v. Northland Swim Club (1987), 35 Ohio App.3d 35.
 {¶ 44} This defense is usually applied in cases where a person is injured when he or she is a spectator at a sporting event. Rees v. Cleveland Indians Baseball Co., Inc., 8th Dist. No. 84183, 2004-Ohio-6112, at ¶ 12. The defense is equally applicable to participants in a sports or recreational activity. In Marchetti v. Kalish (1990), 53 Ohio St.3d 95, syllabus, the Supreme Court of Ohio held: "[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either `reckless' or `intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d."
 {¶ 45} Further, the Supreme Court held: "[a] player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." Thompson v. McNeill (1990),53 Ohio St.3d 102, paragraph two of the syllabus (published the same day as Marchetti). Appellants argue that being hit by a discus is not an ordinary risk of discus throwing. We do not need to address that issue, however, because we conclude that the doctrine does not apply for a different reason.
 {¶ 46} In the case sub judice, appellant Brittany was not a spectator, and appellants did not file suit against Danielle, the other participant. Appellants filed an action against the school districts. Most Ohio courts have only applied the doctrine of primary assumption of the risk to cases where the plaintiff and defendant were involved in the same recreational or sports activity. Evans v. Wills (Dec. 27, 2001), 10th Dist. No. 01AP-422, 2001 Ohio App. LEXIS 5878, at 11 (referencing cases from the Second, Fifth, Sixth, Tenth, and Eleventh Districts). Thus, the doctrine of primary assumption of the risk does not apply to the facts in this case and appellants' second issue has merit. However, we note that although this issue has merit, it does not determine the outcome of this appeal.
 {¶ 47} In their third issue, appellants maintain that R.C.1533.181, the recreational user statute, does not bar their claim.
 {¶ 48} The recreational user statute, R.C. 1533.181, states the following:
 {¶ 49} "(A) No owner, lessee, or occupant of premises:
 {¶ 50} "(1) Owes any duty to a recreational user to keep the premises safe for entry or use;
 {¶ 51} "(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;
 {¶ 52} "(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."
 {¶ 53} R.C. 1533.18 defines "premises" and "recreational user" as:
 {¶ 54} "(A) `Premises' means all privately-owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon.
 {¶ 55} "(B) `Recreational user' means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, swim, operate a snowmobile or all-purpose vehicle, or engage in other recreational pursuits."
 {¶ 56} It appears well settled that R.C. 1533.181 is to be construed as being applicable to incidents occurring on school district property. LiCause v. Canton (1989), 42 Ohio St.3d 109,110; Fuehrer v. Westerville City School Dist. (1991),61 Ohio St.3d 201, 203, citing Johnson v. New London (1988),36 Ohio St.3d 60. "`(* * *) [U]nder the recreational user statute, a political subdivision of the state could have immunity from tort liability to the same extent as an owner of private land. Therefore, as a political subdivision of the state (see R.C.2744.01(F)), the property of school districts meets the definition of "premises" under the statute.'" Rankey v.Arlington Bd. of Ed. (1992), 78 Ohio App.3d 112, 115, citingFuehrer, supra, at 203.
 {¶ 57} The remaining question is whether appellant Brittany was a recreational user when she was struck with the discus. To determine whether she was a recreational user, we must first decide if she was engaged in a recreational pursuit. We conclude that she was. In Miller v. Dayton (1989), 42 Ohio St.3d 113,115, the Supreme Court stated, "[t]he phrase `other recreational pursuits' has been broadly construed by this court and the courts of appeals to include snowmobiling, * * * sledding, * * * horseback riding, * * * watching others swim, * * * motorcycle riding, * * * swinging, * * * merry-go-round rides, * * * watching others play baseball, * * * [and] * * * softball * * *." (Citations omitted.) However, the Court warned, "[t]he existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury." Id.
 {¶ 58} In Miller, the plaintiff had been injured while sliding into second base during a softball tournament. The field where the game had been played was owned by the city of Dayton and was open to the public without the payment of a fee or other consideration. The Supreme Court stated, "we attach no significance to the fact that Miller's injury may have occurred during a highly competitive softball tournament. The essential character of Dayton's Kettering Field is that of premises held open to the plaintiff, without fee, for recreational purposes." Id. The Court went on to hold that Miller was a recreational user and the city of Dayton was entitled to the protection of the recreational user statute. Id. at 116.
 {¶ 59} In LiCause, supra, the plaintiff entered Stadium Park in Canton, Ohio, owned by the city of Canton, in order to view a softball game without paying an entrance fee. When she was leaving, she fell over a cable that had been strung between two posts. The Supreme Court held that because the plaintiff was a recreational user of Stadium Park, under R.C. 1533.181, the city owed no duty to her. Id. at 111. The Court reasoned, "[t]he character of Stadium Park is that of being open to the public for recreational pursuits." Id. at 110. Further, the Court concluded that, "both walking through the park in order to reach or to leave the softball field and watching the softball game are recreational pursuits." Id.
 {¶ 60} Appellants contend that appellees are not protected from liability by the recreational user statute because a more recent Supreme Court case, Ryll v. Columbus Fireworks DisplayCo., Inc., 95 Ohio St.3d 467, 2002-Ohio-2584, "departed from a previous line of cases affording the statute an ultra-liberal construction to the benefit of the property owner." Appellants argue that after Ryll, the recreational user statute only affords immunity to injuries caused by the premises themselves.
 {¶ 61} In Ryll, the plaintiff was killed when a piece of shrapnel from a mortar tube exploded during a July 4, 1996 fireworks display. The Supreme Court held that the city of Reynoldsburg was not protected from liability by the recreational user statute. Id at ¶ 16-17. The Supreme Court stated:
 {¶ 62} "R.C. 1533.181(A)(1) does not state that a recreational user is owed no duty. Instead, R.C. 1533.181(A)(1) immunizes an owner, lessee, or occupant of premises only from a duty `to keep the premises safe for entry or use.' (Emphasis added.) The cause of the injury in this case had nothing to do with `premises' as defined in R.C. 1533.18(A). The cause of the injury was shrapnel from fireworks, which is not part of `privately-owned lands, ways, waters, and (* * *) buildings and structures thereon.' Id. Accordingly, R.C. 1533.181(A)(1) and (2) do not immunize Reynoldsburg. To hold otherwise would allow R.C.1533.181 to immunize owners, lessees, and occupants for any of their negligent or reckless acts that occur on `premises.' The plain language of the statute indicates that the General Assembly had no such intention." Id. at ¶ 15.
 {¶ 63} After a thorough review of Ryll, Miller, andLiCause, we conclude that the facts in this case more closely resemble the facts in Miller and LiCause, rather thanRyll.[4] Here, appellants claim that appellant Brittany was injured, in part, by the negligent construction, design and maintenance of the discus pit, which would be "buildings and structures thereon" the premises. Ryll, supra, at ¶ 15. Unlike the plaintiff in Ryll, whose husband was killed by shrapnel from fireworks which "had nothing to do with the `premises' as defined in R.C. 1533.18(A)[,]" appellants here maintain that the discus pit was unsafe in its construction, maintenance, and design. Id. Thus, we conclude that appellees are entitled to immunity under the recreational user statute and the trial court did not err in granting summary judgment to appellees. As such, appellants' third issue lacks merit.
 {¶ 64} Accordingly, appellants' sole assignment of error is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Diane V. Grendell, J., Cynthia Westcott Rice, J., concur.
[1] We note that appellant Brittany stated in her deposition that she was standing behind the fence, where she was supposed to be. However, this factual conflict does not create a genuine issue of material fact or determine the outcome of this case because of the submitted record and other controlling issues of law in this matter.
[2] On December 18, 2002, the Supreme Court held in Hubbard,
supra, at ¶ 18, that: "[t]he exception [in R.C. 2744.02(B)(4)] is not confined to injury resulting from physical defects or negligent use of grounds or buildings." On April 9, 2003, the Ohio General Assembly amended R.C. 2744.02(B)(4). This following underlined language was added: "* * * political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defectswithin or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." However, we will apply the statute as it existed prior to the amendment since appellant Brittany's injury occurred prior to the amendment. Hubbard at ¶ 17.
[3] In Elston, supra, at ¶ 31, the majority held that R.C.2744.03(A)(3) was not applicable since "[p]ursuant to R.C.2744.03(A)(3), as a defense or basis for immunity, appellee failed to show that [the employee's] position as a baseball coach involved policy-making, planning, or enforcement powers[.]" This writer again dissented, because as the coach of the baseball team, the employee's position involved policy-making with respect to instructing members of the baseball team and he "clearly had discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources." Id. at ¶ 40. In the case at hand, the distinction is irrelevant since appellees provided evidence of the Hanuschak's policy-making, planning, and enforcement powers through her affidavit and deposition, as well as the affidavit of appellee Bristol's athletic director.
[4] It is important to note, which the Sixth District also pointed out in Boggs v. Bowling Green, 6th Dist. No. WD-03-008, 2003-Ohio-4093, at ¶ 6, fn. 5, that in Ryll, the Supreme Court did not overrule Johnson (holding that political subdivisions are entitled to derivative immunity under the Recreational User Statute), Miller, or LiCause.