{¶ 48} The element of recklessness on the part of Deputy Sheriff Allen permeates the analysis of the majority, but the majority refuses to recognize this K-9 *Page 13 
animal for what it is: a dog trained to attack, knock down, and restrain people it perceives to be wrongdoers. I conclude that a genuine issue of material fact was presented as to whether Deputy Sheriff Allen acted recklessly in allowing his dog to roam free. For that reason, I respectfully dissent.
 {¶ 49} The majority states that there is "[n]othing in the record [to indicate] that Mick [the dog] was aggressive or prone to jumping on strangers."
 {¶ 50} However, my review of the record reveals that Allen and Mick became a K-9 team some two months prior; that Mick was approximately thirteen months old at the time of the incident; that Mick had been trained to be aggressive; that Mick had been trained by someone else; that Mick was off his lead; that Allen had a lead in his hand; that Mick had received "off-lead" obedience training, where he is supposed to stay with the handler; that Mick did not stay will Allen while he was off his lead; that there was no barrier between Allen's property and the Hicks' property; and that Mick went behind a pine tree and out of sight of Allen's vision. This evidence was derived from Allen's deposition testimony.
 {¶ 51} What if Deputy Sheriff Allen had committed this same conduct one-half hour later, after his shift had begun at 3:00 p.m.? Reasonable minds could differ on whether it was reckless to allow this dog to roam free without regard to the time of day or the duty status of the deputy.
 {¶ 52} I also take issue with the majority's analysis insofar as it absolves the sheriff's office from civil liability because the act of allowing Mick to roam free constituted a "policy-making" or "planning" function by Deputy Sheriff Allen, in which he *Page 14 
could exercise his discretion as to when Mick was or was not to be on a leash. Again, the question remains, if Allen could not engage in this "policy-making" or "planning" function to allow Mick to roam free during duty hours, how then does it become acceptable "policy-making" or "planning" during off-duty hours?
 {¶ 53} Further, I believe the majority's analysis of Allen's decision on when to leash the dog constitutes a tortured reading of the "policy-making" or "planning" defenses of R.C. 2744.03(A)(3). Thus, I would agree with the Second Appellate District's explanation of what constitutes a discretionary act under the above section:
 {¶ 54} "Routine decisions requiring little judgment or discretion are not subject to immunity pursuant to R.C. 2744.03(A)(3). * * * If an act of discretion is merely a choice between alternate courses of conduct, then almost every volitional act would involve an exercise of discretion, and such a definition would encompass virtually everything that a political subdivision might do. * * * Thus, viewed in the context of the duties and responsibilities of the employee's position, decisions involving the exercise of judgment are discretionary, and therefore do not create liability, whereas routine, ministerial decisions may be a basis for liability."[3]
 {¶ 55} Therefore, I would reverse the judgment entry of the trial court not only on the basis adopted by the majority, but also because there is a genuine issue of material fact as to whether Deputy Sheriff Allen was reckless. Further, I would reverse the *Page 15 
judgment entry with respect to granting immunity to the sheriffs office for the reasons stated.
[3] (Internal citations omitted.) Pope v. Trotwood-Madison City SchoolDist. Bd. of Edn., 2d Dist. No. 20072, 2004-Ohio-1314, at ¶ 23.