LiCause, f.k.a. Caley, Appellee, v. City of Canton et al., Appellants.
Albert et al., Appellees, v. City of Canton et al., Appellants.

[Cite as LiCause v. Canton (1989), 42 Ohio St. 3d 109.]

(Nos. 88-84 and 88-506—Submitted February 15, 1989—Decided April 26, 1989.)

*Tramonte, Kot, Davis & Loury,*
*Kenneth R. Davis* and *Kelly McLaugh-*
*lin,* for appellee LiCause.

*James G. Mannos,* for appellee
Albert et al.

*David L. Herbert* and *Joseph F.*
*Scott,* for appellant city of Canton.

*Day, Ketterer, Raley, Wright &*
*Rybolt, Louis A. Boettler, Charles P.*
*Royer* and *Douglas Maser,* for ap-
pellant Canton Board of Education.

*W. Scott Gwin,* law director,
*Lawrence E. Chapanar* and *Joe Mar-*
*tuccio,* for appellants Canton Board of
Park Commissioners and Canton
Board of Recreation.

ALICE ROBIE RESNICK, J. We ini-
tially note that appellees in both cases
were found to be recreational users.
R.C. 1533.181 states:

"(A) No owner, lessee, or occu-
pant of premises:

"(1) Owes any duty to a recrea-
tional user to keep the premises safe
for entry or use;

"(2) Extends any assurance to a
recreational user, through the act of
giving permission, that the premises
are safe for entry or use;

"(3) Assumes responsibility for
or incurs liability for any injury to per-
son or property caused by any act of a
recreational user."

Although not originally enacted to
provide immunity with regard to public
land, R.C. 1533.181 has been con-
strued by this court to apply to state
and municipal property. See *Moss* v.
*Dept. of Natural Resources* (1980), 62
Ohio St. 2d 138, 16 O.O. 3d 161, 404
N.E. 2d 742; *McCord* v. *Division of*
*Parks & Recreation* (1978), 54 Ohio St.
2d 72, 8 O.O. 3d 77, 375 N.E. 2d 50;
*Johnson* v. *New London* (1988), 36 Ohio
St. 3d 60, 521 N.E. 2d 793. The scope
of R.C. 1533.181 has not been limited
to only those persons entering land to
"* * * hunt, fish, trap, camp, hike,
swim * * *." See R.C. 1533.18(B). Im-
munity has encompassed "other rec-
reational pursuits" such as sledding
and sitting on a beach. See *Marrek* v.
*Cleveland Metroparks Bd. of Commrs.*
(1984), 9 Ohio St. 3d 194, 9 OBR 508,
459 N.E. 2d 873; *Fetherolf* v. *State*
(1982), 7 Ohio App. 3d 110, 7 OBR 142,
454 N.E. 2d 564.

In the case before us, appellees
entered Stadium Park without paying
any entrance fee in order to watch a
softball game. The character of
Stadium Park is that of being open to
the public for recreational pursuits.
See *Miller* v. *Dayton* (1989), 42 Ohio
St. 3d 113, 537 N.E. 2d 1294. Thus
we find that appellees, who walked
through the park in order to reach or
leave the softball field and who also
watched a softball game, are recrea-
tional users within the scope of R.C.
1533.181. We find that both walking
through the park in order to reach or
to leave the softball field and watching
the softball game are recreational pur-
suits within the scope of R.C.
1533.181.

As recreational users, appellees were owed no duty by appellant to keep Stadium Park safe for entry or use. Therefore, liability, if any, can only be imposed on the city of Canton as a municipality under R.C. 723.01.

R.C. 723.01 states:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

When G.C. 3714 (predecessor to R.C. 723.01) was recodified in 1910, it was an exception to the then common-law doctrine of sovereign immunity. *Wall* v. *Cincinnati* (1948), 150 Ohio St. 411, 38 O.O. 289, 83 N.E. 2d 389. The substance of this statute has been incorporated into Ohio law from an early date and is traceable to at least 1852. Hunter & Boyer, Tort Liability of Local Governments in Ohio (1948), 9 Ohio St. L.J. 377, 381.

Its objective was to keep the streets open for the purpose for which they were designed and built; that is, to afford the public safe means of travel. See *Lovick* v. *Marion* (1975), 43 Ohio St. 2d 171, 72 O.O. 2d 95, 331 N.E. 2d 445; *Standard Fire Ins. Co.* v. *Fremont* (1955), 164 Ohio St. 344, 347, 58 O.O. 130, 132, 131 N.E. 2d 221, 224. "* * * The general theory for imposing liability under this section is that the municipality is permitting the existence of a nuisance by failing to keep the public ways clear, open, in repair, and safe for the normal uses thereof." Hunter & Boyer, *supra*, at 381; *Wall*, *op. cit.*

Before sovereign immunity for municipalities was abrogated, see *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 2 OBR 572, 442 N.E. 2d 749, municipalities acting in a governmental capacity could not be sued for their tortious conduct. See *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 447, 28 O.O. 369, 378, 55 N.E. 2d 724, 733. Thus, R.C. 723.01, which imposed a duty on municipalities to keep their streets and public grounds open, in repair, and free from nuisance was in derogation of the common law and strictly construed. *Zupancic* v. *Cleveland* (1978), 58 Ohio App. 2d 61, 63, 12 O.O. 3d 213, 214, 389 N.E. 2d 861, 863.

R.C. 1533.181 was enacted in 1963 in order to protect private landowners from liability when opening their land to the general public for recreational pursuits. The purpose of this statute was " 'to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry about liability.' * * *" *Moss, supra,* at 142, 16 O.O. 3d at 164, 404 N.E. 2d at 745. Because the doctrine of sovereign immunity still was in effect, publicly owned land originally was not within the statute's scope. Nevertheless, private and publicly owned lands both retained immunity against recreational-user liability; the former because of R.C. 1533.181, and the latter because of sovereign immunity.

However, in 1975, pursuant to the Court of Claims Act, R.C. Chapter 2743, the state waived its sovereign immunity. The state's liability henceforth was to be determined "* * * in accordance with the same rules of law applicable to suits between private parties * * *." R.C. 2743.02(A). Because R.C. 1533.181 was such a rule of law between private parties, we held that this statute applied to state-owned

property as well as to private property. See *McCord, supra; Moss, supra.*

In 1982 and 1983, the doctrine of municipal sovereign immunity also was abolished. See *Haverlack, supra,* at paragraph two of the syllabus; *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228. "* * * [M]unicipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities." *Enghauser, supra,* at paragraph two of the syllabus.

Thus, unless there is statutory immunity the sovereign immunity defense "* * * is not available to a municipal corporation in an action for damages alleged to be caused by the tortious conduct of the municipality." *Strohofer v. Cincinnati* (1983), 6 Ohio St. 3d 118, 6 OBR 178, 451 N.E. 2d 787, syllabus.

In *Johnson v. New London, supra,* at 63-64, 521 N.E. 2d at 796-797, we found that R.C. 1533.181 did provide such derivative statutory immunity to municipalities. Because R.C. 1533.181 was "* * * one of the rules governing the liability of private persons for negligence, * * * municipalities, pursuant to *Enghauser,* remained immune from tort liability to recreational users of municipal property * * *." *Id.* at 63, 521 N.E. 2d at 796. Hence, it is settled that R.C. 1533.181 applies to private as well as to both state and municipal property.

The court of appeals in the case before us, however, held that recreational use immunity does not apply to municipalities because R.C. 723.01 is a special statute which derogates from the general application of R.C. 1533.181. The appellate court rendered its decisions in *LiCause* and *Albert* before our decision in *Johnson,*

*supra,* and thus it did not have the benefit of our holding as to recreational-use immunity for municipal property and incorrectly construed R.C. 723.01 and 1533.181.

As seen above, R.C. 723.01 originally was a special statute in derogation of the common-law doctrine of sovereign immunity. With the abrogation of sovereign immunity for municipal negligence, however, R.C. 723.01 clearly no longer can be considered an exception to the common law. To the contrary, R.C. 1533.181 now is a special statute which derogates from the general unavailability of municipal sovereign immunity.

The General Assembly, in R.C. 1.51, instructs us how to treat a special statute which conflicts with a general statute:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

R.C. 1533.181 was enacted several years after R.C. 723.01 (formerly G.C. 3714) was recodified. We find that R.C. 1533.181 and 723.01 are compatible and should be construed together. See *Wooster Republican Printing Co. v. Wooster* (1978), 56 Ohio St. 2d 126, 132, 10 O.O. 3d 312, 315, 383 N.E. 2d 124, 128.

Thus, a person who enters or uses municipal land which is held open to the general public free of charge for recreational pursuit is a recreational user. *Johnson v. New London* (1988), 36 Ohio St. 3d 60, 521 N.E. 2d 793. If such recreational user is injured while

engaged in recreational pursuit on such land the municipality is immune from an action brought under R.C. 723.01 due to the exemption from liability to recreational users in R.C. 1533.181. See *Vitai* v. *Sheffield Lake* (Jan. 21, 1987), Lorain App. No. 4045, unreported. The appellants, therefore, owe no duty to LiCause and Albert who were recreational users pursuant to R.C. 1533.181. We reverse the decisions of the court of appeals and reinstate the judgments of the trial court.

*Judgments reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.