**TOMBA et al.**

v.

**CITY OF WICKLIFFE.**

Court of Common Pleas of Ohio,
Lake County.

No. 00CV000923.

Decided May 16, 2001.

*Alan S. Levine,* for plaintiffs.

*Nick C. Tomino,* for defendant.

EUGENE A. LUCCI, Judge.

This matter came on for consideration upon the city of Wickliffe's motion for summary judgment, filed March 22, 2001, together with the brief in support, plaintiffs' memorandum in opposition, and defendant's reply brief. For the following reasons, defendant's motion for summary judgment is denied.

*Procedural History*

The complaint in this matter was filed on June 2, 2000, and was assigned to Judge James W. Jackson. Service on the defendant, the city of Wickliffe, was perfected by certified mail on June 6, 2000. On January 9, 2001, this matter was transferred to the docket of Judge Eugene A. Lucci. Wickliffe filed its motion for summary judgment on March 22, 2001. Plaintiffs filed their memorandum in opposition to the motion for summary judgment on April 10, 2001, and defendant filed a reply brief on April 16, 2001.

The complaint alleges that on June 4, 1998, plaintiff Renee Tomba was injured because Wickliffe was negligent and allowed a·nuisance to exist in a city park known as Coulby Park. The alleged nuisance consists of a hole in the grass near a picnic pavilion in the park. The complaint alleges that the hole was "approximately four inches deep" and was obscured from plaintiff's view by grass that had grown therein. Plaintiff also presented the affidavit of Jerry A. Venesky, who stated that the hole was roughly two to three inches deep and measured eight inches by eighteen inches. Plaintiff alleges that she stepped into the hole, fracturing her ankle. She further alleges that she incurred medical bills and will continue to do so because her injuries are permanent. The complaint also presents a claim for loss of consortium by plaintiff Robert J. Tomba, who is alleged to be the husband of Renee Tomba.

In its answer, filed August 7, 2000, Wickliffe raised several affirmative defenses, including (1) Ohio's recreational user statutes (R.C. 1533.18 and 1533.181), (2)

4

Ohio's political subdivision tort liability statutes (R.C. Chapter 2744), and (3) immunity under the common law of Ohio.

*Summary Judgment*

Civ.R. 56(C) states:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

Thus, before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.[1]

"The main purpose of the summary judgment procedure is to enable a party to go behind the allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial. * * * [T]he remedy should be applied sparingly and only in those cases where the justice of its application is unusually clear. * * * Resolving issues of credibility or reconciling ambiguities and conflicts in witness' testimony is outside the province of a summary judgment hearing."[2] In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[3]

---

1. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199.

2. *Napier v. Brown* (1985), 24 Ohio App.3d 12, 13–14, 24 OBR 33, 35, 492 N.E.2d 847, 849–850.

3. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904, 907; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

██ Under Ohio law, for purposes of ruling on a motion for summary judgment, "[a] dispute of fact is 'material' if it affects the outcome of the litigation. The dispute is 'genuine' if [it is] manifested by substantial evidence going beyond the mere allegations of the complaint."[4]

In the present case, defendant Wickliffe bases its motion for summary judgment on two arguments: (1) immunity under the political subdivision tort liability act, and (2) immunity under Ohio's recreational user statute.

### Political Subdivision Tort Liability

According to the Ohio Supreme Court, R.C. Chapter 2744 sets forth a three-tiered analysis[5] for determining whether a political subdivision is immune from liability.[6] First, R.C. 2744.02(A)(1) sets forth the general rule of immunity:

"For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental and proprietary functions. *Except as provided in division (B) of this section,* a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added).

The general rule of immunity is not absolute. It is subject to five express exceptions listed in R.C. 2744.02(B). Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions in subsection (B) apply. Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.[7]

In the present case, it is apparent that defendant is a political subdivision entitled to the initial finding of immunity set forth in R.C. 2744.02(A). Next,

---

**4.** *Mount v. Columbus & S. Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 2, 528 N.E.2d 1262, 1264.

**5.** Defendant relies heavily on *Adams v. Willoughby* (1994), 99 Ohio App.3d 367, 650 N.E.2d 932, for the proposition that the city is immune from liability for any acts or omissions occurring in connection with a "governmental function" as defined by R.C. 2744.01(C)(2)(u), and that this immunity is not subject to exception. It is the opinion of this court, however, that the decision of the Ohio Supreme Court in *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614–615, directly contradicts—and therefore overrules—*Adams* on this point. The rule in Ohio requires a three-tiered analysis as set forth in *Cater.*

**6.** *Cater v. Cleveland,* 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614–615; *Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 733 N.E.2d 1141.

**7.** *Cater v. Cleveland,* 83 Ohio St.3d at 28, 697 N.E.2d at 614–615; *Greene Cty. Agricultural Soc.v. Liming,* 89 Ohio St.3d 551, 733 N.E.2d 1141.

however, this court must examine whether any of the applicable exceptions to immunity apply. Plaintiffs argue—and this court agrees—that the pre–1996 Am.Sub.H.B. No. 350 version of R.C. 2744.02(B)(3) is the proper version of the statute to be used in the second-tier immunity analysis. 1996 Am.Sub.H.B. No. 350 was declared to be unconstitutional in its entirety in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. Subsequent bills did not re-enact 1996 Am.Sub. H.B. No. 350.[8] Therefore, the applicable version of R.C. 2744.02(B)(3) provides:

"Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, *or public grounds* within the political subdivisions *open, in repair, and free from nuisance,* except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge." (Emphasis added.) 145 Ohio Laws, Part II, 2211, 2215, 2216.

According to the Ohio Supreme Court, "[p]ursuant to this exception to immunity, a political subdivision is obligated to keep its public grounds free from nuisance. The phrase 'public grounds' has been interpreted to include such areas as municipally owned and controlled parks that are established and maintained for the general public. *Cleveland v. Ferrando* (1926), 114 Ohio St. 207, 150 N.E. 747."[9]

■ Defendant has produced no evidence to establish—according to the evidence standards of Civ.R.56(C)—that the hole into which the plaintiff stepped was "in good repair" or "free from nuisance." Furthermore, plaintiffs have produced substantial evidence—in the form of the affidavit of Jerry A. Venesky and the photographs appended thereto—to suggest that the area of the hole was not in good repair. Therefore, defendant has failed to establish that there is no genuine issue of material fact regarding whether the hole was "in repair" and "free from nuisance." Similarly, defendant has failed to establish that it is entitled to judgment as a matter of law under R.C. Chapter 2744, and it has failed to establish that a reasonable person—viewing the evidence most strongly in favor of the plaintiffs—would necessarily reach a dispositive conclusion adverse to the plaintiffs under R.C. Chapter 2744.

8. *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901.

9. *Cater v. Cleveland,* 83 Ohio St.3d at 30, 697 N.E.2d at 616.

*Recreational User Statute*

A political subdivision has derivative immunity from tort liability to a recreational user of municipal property to the same extent that an owner of private land has such immunity under R.C. 1533.181.[10] Under the statute, the General Assembly has shielded owners of private land from liability to recreational users in three particular ways:

"(A) No owner, lessee, or occupant of premises:

"(1) *Owes any duty* to a recreational user to keep the premises safe for entry or use;

"(2) *Extends any assurance* to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) *Assumes responsibility for or incurs liability for* any injury to person or property caused by any act of a recreational user." (Emphasis added.) R.C. 1533.181(A).

However, these statutory limitations on liability are available only where the "land on which the injury occurred" is held open to the general public for "gratuitous recreational use."[11] The legislative purpose behind this statute is to "encourage owners of premises suitable for recreational pursuits to open their lands for public use."[12]

R.C. 1533.18(B) defines "recreational user" to mean:

"[A] person to whom permission has been granted, *without the payment of a fee or consideration*[13] to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits." (Emphasis and footnote added.)

In the present case, there is substantial evidence that—when viewed most strongly in favor of the plaintiffs—suggests that the "land on which the injury occurred" was not open to the general public.

---

**10.** *Johnson v. New London* (1988), 36 Ohio St.3d 60, 521 N.E.2d 793, syllabus.

**11.** *Loyer v. Buchholz* (1988), 38 Ohio St.3d 65, 66, 526 N.E.2d 300, 301; *LiCause v. Canton* (1989), 42 Ohio St.3d 109, 537 N.E.2d 1298.

**12.** *Loyer v. Buchholz,* 38 Ohio St.3d at 66, 526 N.E.2d at 302; *Fryberger v. Lake Cable Recreation Assn., Inc.* (1988), 40 Ohio St.3d 349, 350, 533 N.E.2d 738, 740.

**13.** Although not briefed by either party, it is possible to view the residency requirement that the city has imposed on the ability to reserve/use the pavilion as "consideration," as that term is used in the statute.

The Civ.R. 56(C) evidence shows that plaintiff Renee Tomba was injured when she stepped into a hole near the pavilion where her son's class picnic was taking place. She tripped in the hole as she was returning to the pavilion to clean up the area. The hole where plaintiff fell is located approximately eighteen inches from the edge of the pavilion's cement slab. It is also located within the apparent circumference of the outer edges of the pavilion structure, about midway between a trash receptacle and what appears to be a water faucet on a free-standing post. The photographs suggest that anyone standing at the location of the hole would be near enough to the pavilion (and to the picnic tables on the cement slab) that they would be perceived as using the pavilion—or intruding upon those who were. Plaintiff's affidavit establishes that she was, in fact, using the pavilion at the time of her fall. She stated that she was in the process of returning to the pavilion to clean up the area during her son's class picnic.

Above the pavilion was a large sign stating three things:

(1) "Reservations needed for use of pavilion"

(2) "—Wickliffe residents only—"

(3) "For reservations, call Wickliffe Recreation at 943–7120."

Defendant's affiant, Service Director Darryl H. Crossman, stated, "Coulby Park is open to all members of the general public for recreational purposes without payment of any fee." He also acknowledged, "The picnic pavilion at Coulby Park can only be reserved in advance by a Wickliffe resident. However, any member of the general public may participate in the use of the pavilion without payment of any fee." On the basis of Director Crossman's affidavit, defendant claims that "there is no restriction on the use of the pavilion."

However, the plain meaning of the words on the sign establishes a genuine issue of material fact regarding whether there are restrictions on the use of the pavilion. First, the sign says, "Reservations needed for use of pavilion." Construing this language most strongly in favor of plaintiffs, it appears that "use" of the pavilion is premised on obtaining a reservation. Director Crossman admits that picnic pavilion reservations may be obtained by Wickliffe residents only. Therefore, notwithstanding Director Crossman's statement to the contrary, the sign indicates that use of the pavilion is limited to Wickliffe residents who make a reservation.

Second, the sign says: "—Wickliffe residents only—." That portion of the sign is set off from the rest of the sign in three ways: (1) by the use of horizontal lines before and after the text, (2) by the use of a different colored ink, and (3) by the use of a different font. Again, viewing this evidence most strongly in favor of plaintiffs, this section of the sign appears to make an independent blanket statement that the pavilion is available for use by Wickliffe residents only.

In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public. The goal of this analysis is to determine the character of the premises.[14] In the present case, when construing the evidence most strongly in favor of plaintiffs, it is apparent that the character of the property upon which the injury occurred was that of a picnic pavilion, restricted by the city for use by Wickliffe city residents only, and located in the midst of a public park.

Because the picnic pavilion was not open for use by the general public, the recreational user statute does not apply to injuries sustained by a Wickliffe city resident who was using the pavilion facility when she was injured. A contrary ruling would encourage the city of Wickliffe to continue to restrict the right to reserve and use the picnic pavilion to city residents. This would run counter to the legislative purpose of granting immunity to encourage owners of land to make the land available for public recreation free of charge.[15]

As applied to municipalities, the recreational user statute seeks to shift the risk and cost of injury from the taxpayer to the general public in exchange for the municipal landowner opening the premises up for use by the general public.[16] A municipality that restricts the use of municipal premises—whether by the requirement of fees or other consideration, or by restricting the reservation and use of municipal facilities to residents only—makes those premises into an island of exclusivity; and in so doing, the municipality forsakes the protection that would otherwise be available under the recreational user statute.

In cases where, as here, the municipality has restricted the reservation rights and the use of a municipal facility to residents only, it is only fitting that the municipality expend municipal taxpayer funds to shoulder the risk and cost of injury. Obviously, it may do so through self-insurance or by purchasing liability insurance.

Accordingly, for the foregoing reasons, the defendant city's motion for summary judgment is hereby denied.

*Motion denied.*

---

14. *Miller v. Dayton* (1989), 42 Ohio St.3d 113, 115, 537 N.E.2d 1294, 1297.

15. *Thomas v. Coleco Industries, Inc.* (N.D.Ohio 1987), 673 F.Supp. 1432, 1434.

16. *Kendrick v. Cleveland Metroparks Bd. of Commrs.* (1994), 102 Ohio App.3d 739, 658 N.E.2d 5; *Harman v. Fostoria* (Feb. 18, 1994), Wood App. No. 93–WD–059, unreported, 1994 WL 50259.