[Cite as *McGuire v. Lorain*, 2011-Ohio-3887.]

STATE OF OHIO       )
                  )ss:
COUNTY OF LORAIN   )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

DOROTHY MCGUIRE

    Appellee

    v.

CITY OF LORAIN, OHIO

    Appellant

C.A. No.     10CA009893

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CV162719

DECISION AND JOURNAL ENTRY

Dated: August 8, 2011

DICKINSON, Judge.

INTRODUCTION

{¶1}   Dorothy McGuire was marching in a Memorial Day parade when she stepped into an uncapped monument box in the middle of the street and broke her ankle. A monument box is a lidded cast-iron container that houses a property pin. She sued the City of Lorain for failing to properly maintain the parade route. The City moved for summary judgment, arguing that it is immune from liability and that the uncapped box was an open and obvious hazard. The trial court denied the motion because it determined that there were genuine issues of material fact. The City has appealed, assigning as error that it has recreational user and political subdivision immunity and that the monument box hazard was open and obvious. We affirm because we do not have jurisdiction to address the City's open and obvious argument, Ms. McGuire was not a recreational user under Section 1533.18.1 of the Ohio Revised Code, and there are genuine issues of material fact in dispute regarding whether the City has political subdivision immunity.

## OPEN AND OBVIOUS

{¶2}    The City's second assignment of error is that the trial court incorrectly determined that the open and obvious doctrine does not apply to an uncapped monument box in the middle of the street as a matter of law.  According to it, a reasonable person in Ms. McGuire's position would have seen the open monument box.  We do not have jurisdiction regarding this assignment of error.

{¶3}    "Generally, the denial of summary judgment is not a final, appealable order." *Hubbell v. City of Xenia,* 115 Ohio St. 3d 77, 2007–Ohio–4839, at ¶9.  "[If] a trial court denies a motion in which a political subdivision . . . seeks immunity," however, its "order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Id.* at syllabus.  We have held that "an appeal from such a decision is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity." *Makowski v. Kohler*, 9th Dist. No. 25219, 2011-Ohio-2382, at ¶7 (citing *Essman v. City of Portsmouth*, 4th Dist. No. 08CA3244, 2009–Ohio–3367, at ¶10; *CAC Bldg. Props. v. City of Cleveland*, 8th Dist. No. 91991, 2009–Ohio–1786, at ¶9 n.1; *Carter v. Complete Gen. Constr. Co.*, 10th Dist. No. 08AP–309, 2008–Ohio–6308, at ¶8); see also *Deveaux v. Albrecht Trucking Co. Inc.*, 9th Dist. No. 09CA0069-M, 2010-Ohio-1249, at ¶7 (concluding that we did not have jurisdiction to address assumption of risk assignment of error in appeal under Section 2744.02(C)).  Accordingly, we will not address the City's second assignment of error.  See *Makowski*, 2011-Ohio-2382, at ¶8 (concluding we did not have jurisdiction to consider statute of limitations argument in appeal filed under Section 2744.02(C)).

RECREATIONAL USER IMMUNITY

{¶4}    The City's first assignment of error is that the trial court incorrectly concluded that it did not have immunity under the recreational user statute, Section 1533.18.1 of the Ohio Revised Code.  Under Section 1533.18.1, "[n]o owner . . . of premises:  (1) [o]wes any duty to a recreational user to keep the premises safe for entry or use; (2) [e]xtends any assurance to a recreational user . . . that the premises are safe for entry or use; [or] (3) [a]ssumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."   For purposes of Section 1533.18.1, "'[r]ecreational user' means a person to whom permission has been granted, without the payment of a fee or consideration . . . , other than a fee or consideration paid to the state or any agency of the state . . . to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits."  R.C. 1533.18(B).

{¶5}    The City has argued that parade participants are recreational users under Section 1533.18(B).  The Ohio Supreme Court, noting that the statute identifies a number of particular recreational uses, has held that courts must apply the doctrine of *ejusdem generis* in determining whether an activity is included within its catch-all "engaged in other recreational pursuits" language.  *Light v. Ohio University*, 28 Ohio St. 3d 66, 68 (1986).  Under that doctrine, if "general words follow the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general class as those enumerated."  *Id*.  The Court reasoned that its conclusion that the doctrine of *ejusdem generis* applies "is supported by the fact that R.C. 1533.18(B) is included in Title 15 of the Revised Code, having to do with conservation of natural resources and is part of R.C. Chapter 1533, dealing with fishing and hunting."  *Id*.  In *Light*, the Supreme Court concluded that a minor who was injured in the locker

room of a university gymnasium was not a recreational user under Section 1533.18(B) because "working out in a gymnasium is not within the contemplation of the recreational-user statutes." *Id*.

{¶6} In *Miller v. City of Dayton*, 42 Ohio St. 3d 113 (1989), the Supreme Court acknowledged a caveat to the rule it set out in *Light*. *Id*. at 115. It held that, if the premises where an injury occurred have generally been held out to the public for recreational uses, "[t]he existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury." *Id*. "For example, we recognize immunity to the owner of a park (which qualifies as recreational premises), whether the injury is to one who is jogging in the park, tinkering with a model airplane or reading poetry to satisfy a school homework assignment." *Id*.

{¶7} In *Fuehrer v. Westerville City School District Board of Education*, 61 Ohio St. 3d 201 (1991), the Supreme Court demonstrated the application of *Light* and *Miller*. A child died on a school soccer field while he and his friends were attempting to raise a goal they had previously knocked over. The child's mother sued the school district, which argued that it had immunity under Section 1533.18.1. The Supreme Court held that the child was not a recreational user under Section 1533.18(B), noting that "[r]oughhousing on a soccer goal is not a recreational activity of the type contemplated by the statute." *Id*. at 204. It also held that, unlike "[p]arks[, which] exist for persons to enjoy many different kinds of recreational pursuits[,] [a] soccer field exists for one purpose—to play soccer." *Id*. It, therefore, concluded that the school district did not have immunity under Section 1533.18.1. *Id*. It did, however, conclude that the school district owed no duty to the child because he had entered the soccer field at his own peril. *Id*.

{¶8}    Similar to *Fuehrer*, the City's argument fails both parts of the Section 1533.18.1 analysis.  First, although marching in a parade could be considered a recreational activity, it is not similar in nature to the type of recreational pursuits identified in Section 1533.18(B).  *Light v. Ohio University*, 28 Ohio St. 3d 66, 68 (1986).  Second, the City has not persuaded us that a four-lane state route running through the heart of a city qualifies as "recreational premises." *Miller v. City of Dayton*, 42 Ohio St. 3d 113, 114 (1989).  At the very least, there is no evidence in the record that the road on which Ms. McGuire was injured is open to the public for recreational uses other than parades.  Accordingly, we conclude that the trial court correctly denied the City immunity under Section 1533.18.1.  The City's first assignment of error is overruled.

POLITICAL SUBDIVISION IMMUNITY

{¶9}    The City's third assignment of error is that the trial court incorrectly concluded that it was not entitled to immunity under Sections 723.01 and 2744.02(B)(3) of the Ohio Revised Code.  Under Section 723.01, "the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, [and] sidewalks . . . within the municipal corporation.  The liability or immunity from liability of a municipal corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code."  Under Section 2744.02(B)(3), "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]"

{¶10} The City has argued that it can not be held liable for an injury caused by the uncapped monument box unless it had notice and a reasonable time to repair the defect before the injury occurred. See *Vogel v. Wells*, 57 Ohio St. 3d 91, 97 (1991) (interpreting prior version of R.C. 723.01). According to the City, there is no evidence that it had actual notice of the defect. Regarding constructive notice, the City has argued that, because it is not known how long the monument box was uncovered, there are no facts under which Ms. McGuire can show that it could or should have known of the defect.

{¶11} We agree that Ms. McGuire has not presented any evidence to show that the City had actual notice of the open monument box. According to workers from the City's engineering and streets departments, the City has not used that particular monument box in over 20 years. The employee who paints lane markings for the City `testified that the lid was in place when he painted the street the previous summer. According to him, because the monument box is in the center of the road, if the lid had been missing when he painted the road, the small guiding wheel on his paint assembly would have fallen into it and broken the assembly. He had no record of that happening when he last painted the street.

{¶12} It also appears undisputed that the City does not have exclusive access to the monument boxes but that private surveyors can remove the lids if they need access to property pins. City workers also testified that passing vehicles sometimes break or knock the lids off the boxes. Workers from the streets department who replaced the missing lid after Ms. McGuire's fall were unable to determine what had happened to the previous lid because they did not find its remnants inside the box or find it in the vicinity.

{¶13} Regarding whether the City had constructive knowledge of the missing lid, city employees testified that workers from the streets department drove up and down the parade route

checking for hazards the Friday before the parade. Early on the morning of the parade, while it was still dark, two workers drove street sweepers up and down the parade route, preparing it for the parade. The workers who operated the sweepers testified that they did not see an open monument box along the route, although they admitted that their attention was on the edges of the street. There is also testimony that, an hour before the parade began, the City's auxiliary police force blocked off the parade route to normal traffic and went over the route to make sure it was clear of parked cars. There is also testimony that there were two auxiliary police officers in cruisers driving very slowly at the front of the parade, who were assigned, as one of their primary duties, to make sure the parade route was safe for its participants. The chief of the auxiliary police force, who was in one of the cruisers, testified that he is familiar with monument boxes and would have had the hole marked with a cone if he had seen it because it would have been foreseeable that someone would step in it.

{¶14} A city has constructive knowledge of a hazard if it was of a nature that it could or should have been discovered, if it existed long enough to have been discovered, and if its discovery would have created a reasonable apprehension of danger. *Harp v. City of Cleveland Hts.*, 87 Ohio St. 3d 506, 512 (2000) (quoting *Franks v. Lopez*, 69 Ohio St. 3d 345, 349 (1994)). Viewing the evidence in a light most favorable to Ms. McGuire, we conclude that there are genuine issues of material fact regarding whether the uncapped monument box was discoverable, whether the hazard existed for sufficient time that the City could or should have discovered it, and whether, if discovered, it would have created a reasonable apprehension of a potential danger. Even if a passing vehicle knocked the cover off after the City did its review of the parade route three days before the event, a reasonable finder of fact could find that the auxiliary police officers at the front of the parade, who were driving very slowly within a couple feet of

the center of the road, should have seen the eight-inch by eight-inch square hole that had been created by the missing cover in the middle of the road.

**{¶15}** The trial court correctly concluded that there are genuine issues of material fact in dispute and that the City was not entitled to judgment on its political subdivision immunity defense as a matter of law. The City's third assignment of error is overruled.

CONCLUSION

**{¶16}** On an appeal under Section 2744.02(C) of the Ohio Revised Code, this Court only has jurisdiction over issues regarding immunity. The trial court correctly concluded that the City is not entitled to immunity under Section 1533.18.1 or Section 2744.02 as a matter of law. The judgment of the Lorain County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

GEOFFREY R. SMITH, Attorney at Law, for Appellant.

THOMAS G. MACKIN, Attorney at Law, for Appellees.

PATRICK C. MACKIN, Attorney at Law, for Appellees.