PAULEY ET AL., APPELLANTS, *v*. THE CITY OF CIRCLEVILLE, APPELLEE, ET AL.

[Cite as *Pauley v. Circleville,* 137 Ohio St.3d 212, 2013-Ohio-4541.]

*Premises liability—Recreational users—R.C. 1533.181—City park—Snow sledding—Property owner not liable to recreational user injured during recreational use, even if property contains a hazardous condition created by property owner.*

(No. 2012-1150—Submitted April 23, 2013—Decided October 16, 2013.)

APPEAL from the Court of Appeals for Pickaway County, No. 10CA31, 2012-Ohio-2378.

_____

KENNEDY, J.

I. Introduction

{¶ 1} Appellants, Jeremy Pauley and his mother, appeal from a judgment of the Fourth District Court of Appeals that affirmed summary judgment in favor of the city of Circleville regarding appellants' civil action for injuries Jeremy sustained while sledding in the city's park. We accepted the appellants' discretionary appeal, which sets forth a single proposition of law: "Recreational user immunity does not extend to man-made hazards upon real property that do not further or maintain its recreational value."

{¶ 2} Under the recreational-user statutes (R.C. 1533.18 and 1533.181), property owners who open their premises to recreational users free of charge are immune from liability for injuries suffered by recreational users while they are engaged in a recreational activity. Appellants urge this court to hold that if a property owner modifies his or her property in a manner that creates a hazard without promoting or preserving the recreational character of the property, immunity does not apply. Finding no support in statutory or case law, we decline

to adopt such an exception. Therefore, we affirm the judgment of the court of appeals.

## II. Facts and Procedural History

{¶ 3} The city owns Barthelmas Park, which contains ball fields, a playground, and various structures, such as a concession stand and picnic shelters. Entry to the park is free of charge.

{¶ 4} In the summer of 2006, the city was offered free topsoil that was excavated from a nearby construction site. The city uses topsoil for numerous projects, including reseeding the park. Consequently, the city accepted approximately 150 to 200 truckloads, which were taken to its maintenance facility for storage. When that facility reached capacity, the remaining topsoil was taken to the park and emptied onto the ground, where it formed two mounds approximately 15 feet high.

{¶ 5} On the afternoon of January 24, 2007, 18-year-old Jeremy Pauley and his friends Kevin Baisden, Danielle Ziemer, and Natasha Cox decided to go snow sledding at the park. Jeremy and Kevin began sledding at about 5 p.m., while the girls looked on. At approximately 6:00 p.m., as it began getting dark, Jeremy decided on a new location for his last sled run, which was, in fact, one of the mounds of dirt that had been stored at the park by the city. Kevin moved the car so that its headlights illuminated the hill. Although there were other sled tracks on the mound, this was the first time that Jeremy had sledded down it. In his deposition, Jeremy asserted that "[t]o the very, very far left side [of the hill] away from where I went sledding there was a little bit of brush or something, but nothing around where I went down."

{¶ 6} Jeremy claimed that as he sledded down the hill, he "hit an immovable object" and "instantly went numb" and could not move his body. Realizing that Jeremy was critically injured, Kevin Baisden called 9-1-1. At the time, Kevin did not notice any obstacle in Jeremy's path. However, the day after

the accident, Kevin went back to the park and observed an object that looked like a railroad tie in the area where Jeremy was injured.

{¶ 7} Jeremy suffered a broken neck, which caused him to become a quadriplegic. He and his mother filed a complaint alleging that the city acted negligently, recklessly, and wantonly in dumping debris in the park, which resulted in a physical defect that caused Jeremy's injuries. The complaint alleged that "waste and debris * * * created an inherently dangerous situation which no user of the park could have anticipated and thus substantially altered the nature and characteristic of the public property."

{¶ 8} The trial court granted the city's motion for summary judgment, finding that the city was immune from suit under R.C. 1533.181. The court of appeals affirmed the trial court's judgment, with one judge dissenting. 2012-Ohio-2378, 971 N.E.2d 410 (4th Dist.).

{¶ 9} We accepted the appellants' discretionary appeal. 133 Ohio St.3d 1422, 2012-Ohio-4902, 976 N.E.2d 913.

{¶ 10} Appellants claim that "the recreational user immunity statute is designed to preclude the right to recovery of civil damages only in specific instances." Appellants contend that R.C. 1533.181 does not apply when a property owner makes the property "more dangerous without promoting or preserving recreational activities."

{¶ 11} The city argues that R.C. 1533.181 provides a "bright-line rule": "If a premises is freely open to the public for recreational purposes and a person is injured while using the premises for a recreational purpose, the landowner has no duty to that user to keep the premises safe." The city argues that appellants "improperly ask this Court to judicially create an exception or limitation to recreational immunity that does not exist in the Statute."

### III. Analysis

*Recreational-User Immunity*

{¶ 12} We begin our analysis by examining the statute, as well as applicable case law.

{¶ 13} R.C. 1533.181(A) states:

> No owner, lessee, or occupant of premises:
>
> (1) Owes any duty to a recreational user to keep the premises safe for entry or use;
>
> (2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;
>
> (3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user.

{¶ 14} R.C. 1533.18 states:

> As used in sections 1533.18 and 1533.181 of the Revised Code:
>
> (A) "Premises" means all privately owned lands, ways, and waters, and any buildings and structures thereon, and all privately owned and state-owned lands, ways, and waters leased to a private person, firm, or organization, including any buildings and structures thereon.
>
> (B) "Recreational user" means a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other

than a fee or consideration paid to the state or any agency of the state, or a lease payment or fee paid to the owner of privately owned lands, to enter upon premises to hunt, fish, trap, camp, hike, or swim, or to operate a snowmobile, all-purpose vehicle, or four-wheel drive motor vehicle, or to engage in other recreational pursuits.

{¶ 15} "Premises" under R.C. 1533.18(A) includes land owned by municipalities and the state. *LiCause v. Canton*, 42 Ohio St.3d 109, 110, 537 N.E.2d 1298 (1989).

{¶ 16} In determining whether immunity applies, courts examine the essential character of the property. First, the property must be held open to the public for recreational use, free of charge. *See id.* at syllabus; *Fryberger v. Lake Cable Recreation Assn., Inc.,* 40 Ohio St.3d 349, 533 N.E.2d 738 (1988), paragraph one of the syllabus. *Compare Loyer v. Buchholz*, 38 Ohio St.3d 65, 526 N.E.2d 300 (1988) (private pool not held open for public use is not protected by R.C. 1533.181); *Brinkman v. Toledo*, 81 Ohio App.3d 429, 611 N.E.2d 380 (6th Dist.1992) (even though sidewalks and streets are often used for recreational purposes, such premises are not protected by recreational-user immunity because they do not have the essential character of land held open to the public for recreational use).

{¶ 17} The character of the premises envisioned by the recreational-user statute involves "the true outdoors," because "[m]ost of the recreational activities enumerated in R.C. 1533.18(B) are generally conducted in 'the wide open spaces,' such as parks or wilderness tracts * * *." *Loyer* at 67. Recreational premises typically "include elements such as land, water, trees, grass, and other vegetation." *Miller v. Dayton*, 42 Ohio St.3d 113, 114, 537 N.E.2d 1294 (1989).

**{¶ 18}** However, "[t]o qualify for recreational user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute." *Id.* For example, a softball field requires certain manmade elements, but those improvements do not change the essential character of the property so as to remove it from the protection of the statute. The property is still held open for public use for recreational purposes. *Id.* at 115. *Compare Light v. Ohio Univ.,* 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986) (a gymnasium, an entirely manmade structure, "is not within the contemplation of the recreational user immunity statutes").

**{¶ 19}** The types of recreational activities that qualify as a recreational use are diverse. R.C. 1533.181(B) lists hunting, fishing, trapping, camping, swimming, operating a snowmobile, all-purpose vehicle, or four-wheel-drive motor vehicle, and "other recreational pursuits" as examples of the types of activities contemplated by the statute. And courts have broadly construed "other recreational pursuits" to include sledding, *Marrek v. Cleveland Metroparks Bd. of Commrs.*, 9 Ohio St.3d 194, 459 N.E.2d 873 (1984); horseback riding, *Crabtree v. Shultz*, 57 Ohio App.2d 33, 384 N.E.2d 1294 (10th Dist.1977); watching others swim, *Fetherolf v. Ohio Dept. of Natural Resources,* 7 Ohio App.3d 110, 454 N.E.2d 564 (10th Dist.1982); motorcycle riding, *Kelley v. Differential Corp.,* 3d Dist. Hancock No. 5-81-35, 1982 WL 6787 (May 6, 1982); using a swingset, *Vitai v. Sheffield Lake,* 9th Dist. Lorain No. 4045, 1987 WL 5561 (Jan. 21, 1987); riding a merry-go-round, *Miller v. Sheffield Lake,* 9th Dist. Lorain No. 4133, 1987 WL 9477 (Apr. 8, 1987); riding a bicycle, *Erbs v. Cleveland Metroparks Sys.*, 8th Dist. Cuyahoga No. 53247, 1987 WL 30512 (Dec. 24, 1987); and watching others play baseball, *Buchanan v. Middletown,* 12th Dist. Butler No. CA86-10-156, 1987 WL 16062 (Aug. 24, 1987).

**{¶ 20}** However, activities such as pulling down a soccer goalpost (*Fuehrer v. Westerville City School Dist. Bd. of Edn.*, 61 Ohio St.3d 201, 574

N.E.2d 448 (1991)), or marching in a parade on a public street (*McGuire v. Lorain*, 9th Dist. Lorain No. 10CA009893, 2011-Ohio-3887, 2011 WL 3426186 (Aug. 8, 2011)), are not the types of activities envisioned by the recreational-user immunity statutes.

*Property Owners Owe No Duty of Care to Keep Their Premises*

*Safe for Entry or Use by Recreational Users*

{¶ 21} Under R.C. 1533.181(A)(1), "[n]o owner owes *any duty* to a recreational user to keep the premises safe for entry or use." (Emphasis added.) A duty is "[a] legal obligation that is owed or due to another and that needs to be satisfied." *Black's Law Dictionary* 580 (9th Ed.2009). Generally speaking, "[i]f there is no duty, no liability can follow." *Collins v. Sabino*, 11th Dist. Trumbull No. 96-T-5590, 1997 WL 531246, * 4 (Aug. 29, 1997), fn. 5. Consequently, an owner cannot be held liable for injuries sustained during recreational use "even if the property owner affirmatively created a dangerous condition." *Erbs v. Cleveland Metroparks Sys.,* at *2, citing *Milliff v. Cleveland Metroparks Sys.*, 8th Dist. Cuyahoga No. 52315, 1987 WL 11969 (June 4, 1987); *see also Phillips v. Ohio Dept. of Natural Resources*, 26 Ohio App.3d 77, 79, 498 N.E.2d 230 (10th Dist.1985) (property owner not liable to recreational user for willful and wanton failure to warn of dangerous condition); *Press v. Ohio Dept. of Natural Resources,* Ct. of Cl. No. 2005-100004-AD, 2006-Ohio-1024, 2006 WL 538106, ¶ 11 (property owner not liable to recreational user for injuries caused by owner's affirmative creation of a hazard). The determination of whether R.C. 1533.181 applies depends not on the property owner's actions, but on whether the person using the property qualifies as a recreational user. *Estate of Finley v. Cleveland Metroparks*, 189 Ohio App.3d 139, 2010-Ohio-4013, 937 N.E.2d 645, ¶ 50 (8th Dist.); *Look v. Cleveland Metroparks System,* 48 Ohio App.3d 135, 137, 548 N.E.2d 966 (8th Dist.1988).

**{¶ 22}** In this case, appellants admitted that Pauley was a recreational user within R.C. 1533.181, as he clearly was. He entered the park, free of charge, to go sledding. Thus, the city owed him no duty to keep the premises safe, and the city's alleged creation of a hazard on the premises does not affect its immunity.

*Miller v. Dayton* and *Ryll v. Columbus Fireworks Display Co., Inc.*

**{¶ 23}** In arguing that property owners should not be afforded immunity if they "render[] their land more dangerous without promoting or preserving recreational activities," appellants rely primarily upon *Ryll v. Columbus Fireworks Display Co., Inc.*, 95 Ohio St.3d 467, 2002-Ohio-2584, 769 N.E.2d 372, and *Miller v. Dayton*, 42 Ohio St.3d 113, 537 N.E.2d 1294.

**{¶ 24}** Appellants cite *Ryll* for the proposition that even if an injured person was a recreational user within the meaning of R.C. 1533.18(B), the property owner is not automatically afforded immunity in all cases. "In addition to considering whether the plaintiff was a 'recreational user' within the meaning of R.C. 1533.18(B)," appellants urge, "courts must also determine whether the cause of the injury is attributable to premises that are truly recreational."

**{¶ 25}** Citing *Miller,* appellants then ask this court to hold that "[i]n lawsuits involving man-made objects, liability has been precluded only when such improvements enhance the recreational activities on the property." We do not agree.

**{¶ 26}** In *Ryll*, a spectator was attending a fireworks show sponsored by the city of Reynoldsburg when he was fatally injured by shrapnel from a fireworks shell. The spectator's estate sued the city, which asserted that it was immune from liability under the recreational-user statutes. We held that the recreational-user statute immunizes property owners from injuries that arise from a defect in the premises. Because the shrapnel was not a defect *in the premises*, immunity did not apply.

**{¶ 27}** In *Miller*, the plaintiff was playing in a softball tournament in a park owned by the city of Dayton when he was injured sliding into second base. The plaintiff sued the city seeking to recover for his injuries. The trial court granted summary judgment to the city pursuant to R.C. 1533.181.

**{¶ 28}** The court of appeals reversed the trial court's judgment. The court of appeals held that a baseball diamond is an artificial, manmade development, bearing little resemblance to land in its natural state. Thus, the court of appeals held that the plaintiff was not a recreational user, and the city was not immune.

**{¶ 29}** This court held that "[i]n determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public." *Miller,* 42 Ohio St.3d 113, 537 N.E.2d 1294, at paragraph one of the syllabus.

**{¶ 30}** In its analysis, this court stated that "the presence of man-made improvements on a property does not remove the property from statutory protection." *Id.* at 114. "To qualify for recreational-user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute." *Id.* We further instructed that the premises should be "viewed as a whole" to determine whether users enter to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits. *Id.* at 115.

**{¶ 31}** Applying this test, we held that "[t]he essential character of [the ballpark] is that of premises held open to the plaintiff, without fee, for recreational purposes" and that improvements such as "dugouts, fences, base plates, and similar manmade structures" did not change the park's essential character as outdoor premises used for recreational purposes within the recreational-user statutes. *Id.* Thus, the plaintiff was a recreational user, and the city was immune from suit.

{¶ 32} We find that the instant case is distinguishable from both *Ryll* and *Miller*. In *Ryll*, the injury was caused by a fireworks shell, not by a defect on the city's premises, so R.C. 1533.181 did not immunize the city from liability. In the instant case, the railroad-tie-like object was embedded in a mound of dirt that was part of the park at the time Jeremy suffered his accident. Therefore, the injury was caused by a defect in the premises, making *Ryll* inapplicable.

{¶ 33} In *Miller,* there was no discussion of a defect in the premises. Indeed, the recreational-user statutes protect property owners from such defects. Rather, the question in *Miller* was whether manmade *improvements*, such as a baseball diamond, changed the essential character of the property to something other than an outdoor space used for something other than an outdoor recreational activity. Accordingly, *Miller* lends no support to appellants' proposition that liability is precluded for injuries caused by manmade improvements only when such improvements enhance the recreational activities on the property. Whether the manmade improvements in *Miller* enhanced the recreational activities in the park was irrelevant. The question was whether the improvements so changed the essential character of the park as to take it outside the protection of the statute. We cannot accept as reasonable any contention that the presence of a railroad tie in a public park changes its essential character as a recreational space.

{¶ 34} Moreover, to adopt appellants' reading of *Miller* would require property owners to make their property safe for entry and use in direct contravention of the plain language in R.C. 1533.181(A)(1). "It is not this court's role to apply a judicially created doctrine when faced with statutory language that cuts *against* its applicability." (Emphasis sic.) *Wallace v. Ohio Dept. of Commerce,* 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 33.

{¶ 35} In addition, adopting appellants' interpretation of *Miller* would conflict with the purpose of the recreational-user statute, which is to encourage owners of premises suitable for recreational pursuits to open their land to public

use without fear of liability. *Moss v. Dept. of Natural Resources*, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980); *Marrek v. Cleveland Metroparks Bd. of Commrs.*, 9 Ohio St.3d at 198, 459 N.E.2d 873. Removing the protection of immunity would undoubtedly cause property owners to restrict recreational use of their properties, or close them entirely, from fear of liability.

{¶ 36} Finally, even assuming arguendo that we agreed with appellants' interpretation of *Miller*, it would not change the outcome in this case. *Miller* requires that the property be "viewed as a whole," and only when the "essential character" of the property has been altered to something other than an outdoor property on which outdoor recreational activities occur does immunity fall away.

{¶ 37} The park in this case is an outdoor property with trees and grass and is open to the public free of charge for picnicking and sporting activities such as sledding, baseball, soccer, and basketball, as well as other recreational activities that inevitably occur in parks, such as tinkering with a model plane, reading poetry, or jogging. *See Miller*, 42 Ohio St.3d at 115, 537 N.E.2d 1294. The alleged defect in this case is an object resembling a railroad tie. When viewing the park property "as a whole," the existence of a single railroad tie does not change the essential character of the park to something other than a property that is open for recreational use.

{¶ 38} Critics may claim that our decision reaches a harsh result. However, the language of the recreational-user statute is plain: a property owner owes no duty to a recreational user to keep the property safe for entry or use. Creating an exception to this immunity is a policy decision that comes within the purview of the General Assembly, not the courts. The General Assembly understands how to draft laws that contain exceptions, but included no exception that can be applied in this case. And we will not create an exception by judicial fiat. *Akron v. Rowland*, 67 Ohio St.3d 374, 380, 618 N.E.2d 138 (1993).

Conclusion

**{¶ 39}** Pauley entered the park free of charge and engaged in the recreational activity of snow sledding on the date of his injury. Therefore, as he conceded, he was a recreational user as defined in R.C. 1533.18(B). Therefore, the city was not liable for his injuries, because it owes no duty to recreational users to ensure that the park is safe for entry or use. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

PFEIFER and O'NEILL, JJ., dissent.

———————————

**PFEIFER, J., dissenting.**

**{¶ 40}** I join Justice O'Neill's dissent, although I do not share his enthusiasm for the recreational-user statutes. In particular, the immunity provisions contained in R.C. 1533.18 and 1533.181 are overbroad and provide unreasonable and, with respect to governmental entities, unconstitutional protection to premises owners.

———————————

**O'NEILL, J., dissenting.**

**{¶ 41}** I respectfully dissent from the majority in this case. The holdings of the Fourth District Court of Appeals and the Pickaway County Court of Common Pleas granting summary judgment to the city of Circleville should be reversed, and this case should be remanded for trial. I agree wholeheartedly with the letter, spirit, and intent of most recreational-user statutes. This court has said that the purpose of Ohio's recreational-user statute is " 'to encourage owners of premises suitable for recreational pursuits to open their land to public use without worry about liability.' " *Marrek v. Cleveland Metroparks Bd. of Commrs.,* 9 Ohio

St.3d 194, 198, 459 N.E.2d 873 (1984), quoting *Moss v. Dept. of Natural Resources*, 62 Ohio St.2d 138, 142, 404 N.E.2d 742 (1980). There is no question that a swimming-pool owner would simply close the pool if every child who slipped on the wet pavement was entitled to litigate his boo-boo for years in a court of competent jurisdiction. However, when, as here, a property owner converts a recreational park to a municipal dump site for construction fill and debris, there is no statute in the land that should shield that tortfeasor from accountability for such a disastrous action. As stated so eloquently by Justice Cardozo in *Palsgraf*: "The risk reasonably to be perceived *defines the duty to be obeyed*." (Emphasis added.) *Palsgraf v. Long Island RR. Co.,* 248 N.Y. 339, 344, 162 N.E. 99 (1928).

{¶ 42} In *Miller v. Dayton*, this court extended recreational-user immunity to improvements made to property. 42 Ohio St.3d 113, 537 N.E.2d 1294 (1989). We said that the

> significant query is whether such improvements change the character of the premises and put the property outside the protection of the recreational-user statute. To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon "* * * to hunt, fish, trap, hike, swim, or engage in other recreational pursuits?"

*Id.* at 114-115 (quoting R.C. 1533.18(A)).

{¶ 43} The majority asserts that our holding in *Miller* requires that the property be viewed as a whole, and only when the "essential character" of the

SUPREME COURT OF OHIO

entire property has been altered to something other than an outdoor property on which outdoor recreational activities occur does immunity fall away. Majority opinion at ¶ 36. The opinion goes on to say that "[w]hen viewing the park property 'as a whole,' the existence of a single railroad tie does not change the essential character of the park to something other than a property that is open for recreational use." Majority opinion at ¶ 37. Even if the majority's overreliance on the words "as a whole" is correct—and it is not—I disagree. And let's be accurate here—we are not talking about a single railroad tie. That tie that crippled this child was part of an overall scheme of disposal of huge mounds of debris that the city had incredibly decided to place in the middle of a recreational park! Cover it with a light dressing of snow, and the perfect killing field was created. I would hold, as a matter of law, that when the owner of a property that *enjoys the immunity granted by the people of Ohio* for recreational purposes makes a conscious decision to use the property for other purposes, the immunity ceases. *See Huffman v. Willoughby,* 11th Dist. Lake No. 2007-L-040, 2007-Ohio-7120, ¶ 50 (a lowhead dam "was not an improvement that was made to encourage the recreational use of this part of the river. Instead, * * * it made that part of the river inherently dangerous and thus not suitable for recreational use"); *Vinar v. Bexley*, 142 Ohio App.3d 341, 755 N.E.2d 922 (10th Dist.2001) (because a roadway through a park was available to the public for travel not related to a recreational use, recreational-user immunity under R.C. 1533.181 is inapplicable). *See also Smith v. S. Pacific Transp. Co., Inc.*, 467 So.2d 70, 73 (La.App.1985) (when persons are allowed to use the property for purposes not associated with recreational activities, the statutes should not apply). To hold otherwise would be to suggest, for example, that the city could store hazardous waste alongside the running track, or possibly it could release wild animals from the city zoo into the park area in the hopes that they would find dinner on their own. Would the current

state of the law in Ohio absolve such conduct, possibly with the addition of attractive signs cautioning the children to "play at your own risk"?

**{¶ 44}** In my opinion, it is wholly irrelevant to focus any attention whatsoever on the actions or the knowledge of the injured child. The city made a decision to dump huge mounds of debris into a city-owned park. When it did that, it lost its "recreational user" immunity entirely. Accordingly, I respectfully dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Bashein & Bashein Co., L.P.A., and W. Craig Bashein; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers; and George R. Oryshkewych, for appellants.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, Todd M. Raskin, and Frank H. Scialdone; and Law Offices of Douglas J. May and Patrick J. Deininger, for appellee.

Elk & Elk Co., Ltd., and Kimberly C. Young, urging reversal for amicus curiae Ohio Association for Justice.

Roetzel & Andress, L.P.A., and Stephen W. Funk, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

Isacc, Brandt, Ledman & Teetor, L.L.P., Mark Landis, and Aaron M. Glasgow, urging affirmance for amici curiae County Commissioners Association of Ohio, Ohio Township Association, and Ohio Parks and Recreation Association.

Ice Miller L.L.P., and Philip Hartmann, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging affirmance for amicus curiae Ohio Municipal League.

_____